### KANEDA v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. February 13, 1922.)

No. 3692.

1. **Aliens ⬅️40—Constitutional law ⬅️318—Alien not entitled, under Constitution, to judicial hearing on right to enter.**

Congress can prescribe the conditions on which aliens will be admitted to the country, so that Act Feb. 5, 1917, § 17 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼ii), making the adverse decision of the Immigration Board final, unless reversed by the Secretary of Labor, when construed with sections 15 and 16 (sections 4289¼hh, 4289¼i), relating to examination before the board, and providing that removal of the applicant from the vessel pending such examination shall not be considered a landing, does not violate Const. Amends. 5 and 6, by depriving an alien while within the territorial jurisdiction of the United States, of his liberty without due process of law.

2. **Aliens ⬅️54—Constitutional law ⬅️72—Courts may not prescribe limitations of examinations by immigration officials and decide false oath was to immaterial matter.**

Under Act Feb. 5, 1917, § 16 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼i), requiring aliens to state under oath certain facts and such other information regarding themselves as will aid the immigration officials in determining their right to enter, the courts cannot prescribe what information the immigration officials can seek, and cannot hold that a false statement as to relatives of the alien within the country, which was one of the facts regularly inquired about, was immaterial, so as not to be perjury.

---

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. Aliens ⟨⟩53—False testimony at hearing is crime involving moral turpitude.
  Under Act Feb. 5, 1917, § 16 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼i), making a false statement under oath relating to the right of alien to admission perjury, a statement by the alien that he had no relatives within the country was a crime involving moral turpitude, which justified his exclusion under section 3 of the act.

Appeal from the District Court of the United States for the Territory of Hawaii; J. B. Poindexter, Judge.

Habeas corpus by Buntaro Kaneda against the United States to procure applicant's discharge from custody of the immigration service. From a judgment discharging the writ, and remanding applicant to custody, applicant appeals. Affirmed.

Thompson, Cathcart & Lewis, Frank Andrade, George S. Curry, and Barry S. Ulrich, all of Honolulu, T. H., and Annette Abbott Adams, of San Francisco, Cal., for appellant.

S. C. Huber, U. S. Atty., of Honolulu, T. H., and John T. Williams, U. S. Atty., and Ben F. Geis, Asst. U. S. Atty., both of San Francisco, Cal.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

MORROW, Circuit Judge. Buntaro Kaneda, the appellant, a citizen and subject of the empire of Japan, aged 22 years, arrived at the port of Honolulu, Hawaii, on the 5th day of October, 1919, as a first-class passenger on the steamship Korea Maru. He had been provided with a passport by the Japanese authorities, with which he applied for admission to the United States, stating to the board of special inquiry in the Immigration Service that he intended to investigate the conditions of Hawaii's Japanese and then report to certain newspapers in Japan; that he expected to remain in Hawaii for 8 months; that he had attended the Waseda University, Tokyo, for 2½ years, but had no papers showing that he had attended such school. He also claimed to have worked as a reporter and writer on the daily paper, Niigata Asahi, in Niigata City, Japan, for one year before his departure. The applicant carried no family record, but stated that his father was dead, that his father had been a farmer, that his mother was living, that he had two brothers and one sister in Japan, and that he had no relatives in Hawaii. Later, when confronted with the records of the immigration office in Honolulu, showing the arrival in Honolulu from Japan of two Japanese persons, one in 1906 and the other in 1908, coming from the same place in Japan as appellant, and bearing the name of Kaneta, the appellant admitted that he had two brothers residing in Hawaii, and that he had lied to the board of special inquiry, because he thought it would be of no benefit to him to say that he had relatives in Hawaii, and that he was afraid he would not be admitted if he had; that he told this lie while testifying under oath to tell the truth, for the purpose of gaining admission into the United States.

Appellant was denied admission to the United States by the board of special inquiry, for the reason that he had admitted committing a crime or misdemeanor involving moral turpitude, to wit, perjury. An

appeal from this decision was taken to the Secretary of Labor. The decision was affirmed by the Assistant Secretary of Labor. The appellant thereafter petitioned the District Court of Hawaii for a writ of habeas corpus, alleging unlawful restraint, and that the hearing before the board of special inquiry was unfair and was merely the semblance of a hearing. The writ was issued, a hearing was had, and on February 16, 1920, the writ was discharged, and the appellant remanded to the custody of the United States immigration inspector. From the order and judgment of the District Court this appeal is taken.

The authority of the court to review the proceedings before the board of special inquiry and the Secretary of Labor is invoked by the appellant on the ground that the order of exclusion was not the result of a fair and impartial hearing. Alleging that appellant was within the territorial jurisdiction of the United States, he claims the protection of the Fifth and Sixth Amendments of the Constitution of the United States against being deprived of his liberty without due process of law and against being deported on the charge of perjury. Alleging that his false statement to the board of special inquiry was not material to the investigation, he claims it was not perjury, and did not involve moral turpitude.

[1] It is provided in section 3 of the Act of February 5, 1917 (39 Stat. 874, 875 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼b):

"That the following classes of aliens shall be excluded from admission into the United States: * * * Persons who have been convicted of or admit having committed a felony or other crime or misdemeanor involving moral turpitude."

In section 16 of the act (section 4289¼i) it is provided:

"Every alien who may not appear to the examining immigrant inspector at the port of arrival to be clearly and beyond a doubt entitled to land shall be detained for examination in relation thereto by a board of special inquiry."

And in section 15 (section 4289¼hh) it is provided that, pending such examination of an alien, he may be removed from the vessel to a designated place, "but such temporary removal shall not be considered a landing." In section 17 of the act (page 887 [section 4289¼ii]) it is provided:

"In every case where an alien is excluded from admission into the United States, under any law or treaty now existing or hereafter made, the decision of a board of special inquiry adverse to the admission of such alien shall be final, unless reversed on appeal to the Secretary of Labor."

In the Japanese Immigrant Case, 189 U. S. 86, 97, 23 Sup. Ct. 611, 613 (47 L. Ed. 721), the Supreme Court, reviewing its previous decision relating to questions arising under acts of Congress excluding certain classes of alien immigrants, said:

"That Congress may exclude aliens of a particular race from the United States, prescribe the terms and conditions upon which certain classes of aliens may come to this country, establish regulations for sending out of the country such aliens as come here in violation of law, and commit the enforcement of such provisions, conditions, and regulations exclusively to executive officers, without judicial intervention, are principles firmly established by the decisions of this court."

In Turner v. Williams, 194 U. S. 279, 24 Sup. Ct. 719, 48 L. Ed. 979, the proceedings were upon a warrant of deportation issued by the Secretary of Commerce and Labor. The warrant was resisted upon the ground that it was in violation of the Fifth and Sixth Amendments to the Constitution of the United States. The court, answering this contention, said (194 U. S. 289, 24 Sup. Ct. 722, 48 L. Ed. 979):

"Repeated decisions of this court have determined that Congress has the power to exclude aliens from the United States, to prescribe the terms and conditions on which they may come in, to establish regulations for sending out of the country such aliens as have entered in violation of law, and to commit the enforcement of such conditions and regulations to executive officers, that the deportation of an alien who is found to be here in violation of law is not a deprivation of liberty without due process of law, and that the provisions of the Constitution securing the right of trial by jury have no application."

In the case of U. S. v. Ju Toy, 198 U. S. 253, 262, 25 Sup. Ct. 644, 646 (49 L. Ed. 1040), application for admission into the United States was made by one who claimed to be a citizen of the United States. The Supreme Court, referring to that feature of the case, said:

"The act purports to make the decision of the Department final, whatever the ground on which the right to enter the country is claimed, as well when it is citizenship as when it is domicile and the belonging to a class excepted from the Exclusion Acts."

But the applicant, claiming to be a citizen of the United States returning to the United States after a temporary absence, claimed the protection of the Fifth Amendment to the Constitution of the United States that no person shall be deprived of his liberty without due process of law. The court answered this claim by the declaration that:

"If, for the purpose of argument, we assume that the Fifth Amendment applies to him, and that to deny entrance to a citizen is to deprive him of liberty, we nevertheless are of opinion that with regard to him due process of law does not require a judicial trial."

With respect to the claim that the applicant was within the boundary of the United States, the court said:

"The petitioner, although physically within our boundaries, is to be regarded as if he had been stopped at the limit of our jurisdiction and kept there while his right to enter was under debate."

In Chin Yow v. United States, 208 U. S. 8, 28 Sup. Ct. 201, 52 L. Ed. 369, the applicant for admission into the United States claimed to be a citizen of the United States. His application having been denied by the immigration authorities, he appealed to the United States District Court upon habeas corpus, alleging that he had been excluded by the arbitrary action of, and abuse of the powers and discretion reposed in, immigration officers. The Supreme Court held that the decision of the immigration officers was final, but that "is on the presupposition that the decision was after a hearing in good faith, however summary in form."

This last declaration of the Supreme Court has become the authority relied upon in numerous cases for petitions to the United States District Court for writs of habeas corpus to review the proceedings before the immigration officers. It is accordingly alleged in this case

that the appellant did not have a fair and impartial hearing before the immigration authorities. The proceedings in formal procedure were clearly fair and impartial. Did they exceed the legal limit authorized by statute for such an inquiry?

In Zakonaite v. Wolf, 226 U. S. 273, 274, 275, 33 Sup. Ct. 31, 32 (57 L. Ed. 218), it was contended on behalf of the petitioner in the District Court that there was no evidence before the Secretary of Commerce and Labor sufficient to warrant a finding upon which the order of deportation was based. The Supreme Court was of the opinion that the evidence was adequate to support the Secretary's conclusion of fact, and, that being so, the appellant having had a fair hearing, the findings were not subject to review by the courts. The court said further:

"It is entirely settled that the authority of Congress to prohibit aliens from coming within the United States and to regulate their coming includes authority to impose conditions upon the performance of which the continued liberty of the alien to reside within the bounds of this country may be made to depend, that a proceeding to enforce such regulations is not a criminal prosecution within the meaning of the Fifth and Sixth Amendments, that such an inquiry may be properly devolved upon an executive department or subordinate officials thereof, and that the findings of fact reached by such officials, after a fair, though summary, hearing, may constitutionally be made conclusive, as they are made by the provisions of the act in question."

[2] It is contended by the appellant that the false oath made by him, that he had no relatives in Hawaii, was not material to the inquiry that was being prosecuted by the immigration commissioner. It is provided in section 16 that:

"All aliens coming to the United States shall be required to state under oath the purposes for which they come, the length of time they intend to remain in the United States, whether or not they intend to abide in the United States permanently and become citizens thereof, and such other items of information regarding themselves as will aid the immigration officials in determining whether they belong to any of the excluded classes enumerated in section 3 hereof."

The facts that would aid the immigration official in determining whether an alien belonged to any of the excluded classes would be material to such an inquiry, and the scope of that inquiry must be a matter within their sound administrative discretion. It is not for the courts to prescribe rules of evidence for such an investigation. If the questions asked appear to be fair and reasonable for the purpose of enabling the officials to perform their duty, they cannot be held in violation of the statute. As a matter of fact, the question asked in this case was the usual one in such cases.

In Jeung Bock Hong v. White, 258 Fed. 23, 169 C. C. A. 161, this court said:

"The discrepancies in the testimony appear to be unimportant; but if, taking them altogether, the executive officers of the department found that the evidence in support of the petitioners' right to land and enter the United States was so impaired as to render it unsatisfactory, the court is not authorized to reverse that conclusion."

[3] It is next contended that the admission of the appellant that he had made a false statement when he told the board of special inquiry

upon oath that he had no relatives in Hawaii was not an admission that he had committed a crime involving moral turpitude. Section 16 of the act, referring to the oaths required of witnesses before the inspector, provides:

"That any person to whom such an oath has been administered, under the provisions of this act, who shall knowingly or willfully give false evidence or swear to any false statement in any way affecting or in relation to the right of any alien to admission, or readmission to, or to pass through, or to reside in the United States, shall be deemed guilty of perjury."

We are of the opinion that the false statement made by the appellant to the board of special inquiry clearly and distinctly involved moral turpitude of the most serious and objectionable character.

The judgment of the District Court is affirmed.