## WONG YOW v. WEEDIN, Commissioner of Immigration.

Circuit Court of Appeals, Ninth Circuit. July 1, 1929.

No. 5734.

Hugh C. Todd, of Seattle, Wash., for appellant.

Anthony Savage, U. S. Atty., and Tom De Wolfe, Asst. U. S. Atty., both of Seattle, Wash. (John F. Dunton, U. S. Immigration Service, Seattle, Wash., on the brief), for appellee.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

DIETRICH, Circuit Judge. Wong Yow, the appellant, is a full-blood Chinese person, of Chinese nativity. In 1902, when he was 10 years old, he came to the United States to join his father, who was then, and ever since has been, a domiciled merchant, in business at Astoria, Or. He was educated in the public schools and a trade school in Oregon, and later became a partner in his father's business, and at all times herein mentioned had the status of a Chinese merchant under article 2 of the treaty with China of November 17, 1880 (22 Stat. 826). See Lau Ow Bew v. United States, 144 U. S. 47, 12 S. Ct. 517, 36 L. Ed. 340. He made a visit to China in 1909, and there married his first wife, Ju Shee. Shortly thereafter he returned to the United States, and on December 19, 1915, he married a second wife, at Astoria or Portland, though his first wife was still living, in China, and not divorced. With credentials as before, in 1927 he again visited China, where his second wife, who had accompanied him, died. He returned to the United States on April 23, 1928, bringing with him his first wife, and in the proceedings taken to procure her admission a few days after his return he disclosed fully the circumstances of his two marriages. Except in so far as affected by his second marriage, the regularity and legality of his original entry, his two visits to China, his return therefrom, and his domicile here are unquestioned. Pursuant to a warrant issued by the Secretary of Labor on May 3, 1928, he was arrested, and, after hearing, he was ordered deported upon the ground that "he has been convicted of or admits the commission of a felony or other crime or misdemeanor involving moral turpitude, to wit, bigamy, prior to entry into the United States." By the court below his petition for writ of habeas corpus was denied, and he brings this appeal.

The facts being undisputed, the controlling question is of the construction and application of section 19 of the Immigration Act of February 5, 1917 (39 Stat. 874, 889; 8 USCA § 155), which, in so far as pertinent is as follows:

"Except as hereinafter provided, any alien who, after February 5, 1917, is sentenc-

ed to imprisonment for a term of one year or more because of conviction in this country of a crime involving moral turpitude, committed within five years after the entry of the alien to the United States, or who is hereafter sentenced more than once to such a term of imprisonment because of conviction in this country of any crime involving moral turpitude, committed at any time after entry; * * * any alien who was convicted, or who admits the commission, prior to entry, of a felony or other crime or misdemeanor involving moral turpitude; * * * shall, upon warrant of the Secretary of Labor, be taken into custody and deported. * * * The provision of this section respecting the deportation of aliens convicted of a crime involving moral turpitude shall not apply to one who has been pardoned, nor shall such deportation be made or directed if the court, or judge thereof, sentencing such alien for such crime shall, at the time of imposing judgment or passing sentence or within thirty days thereafter, due notice having first been given to representatives of the State, make a recommendation to the Secretary of Labor that such alien shall not be deported in pursuance of this subchapter; nor shall any alien convicted as aforesaid be deported until after the termination of his imprisonment. The provisions of this section, with the exceptions hereinbefore noted, shall be applicable to the classes of aliens therein mentioned irrespective of the time of their entry into the United States."

Considering the differences of view in respect of marriage apparently prevailing in the two countries, and what seems to be a more or less common practice of concubinage sanctioned by Chinese custom, and other circumstances of the case, counsel for appellant urges that his conduct in taking the second wife while his first wife was living did not involve moral turpitude. In his report to his superiors, the inspector who made the investigation used this language: "In view of bureau letter No. 54889/98 of November 12, 1920, discussing a similar case, I submit the case without recommendation as to deportation. Also I have a recollection of a Chinaman, accompanied by two wives, applying for admission at San Francisco a few years ago. The Chinese and his first married wife were allowed to enter." In the letter thus referred to, written by the Secretary of Labor, we find this language: "The charge that the applicant is a polygamist is not, in the opinion of the department, sustained. It is likely—indeed,

highly probable—that his belief simply consists in subscribing to the practice of concubinage, as is sanctioned by the Chinese custom. * * * The Secretary personally passed upon a situation similar to this in 1914 and directed landing of the applicant. In that case, the applicant, who was a returning merchant, was shown to have a wife in this country, and a secondary wife, or concubine, in China."

But assuming, without deciding, that, notwithstanding the circumstances shown, the second marriage involved moral turpitude, we note that it was contracted, not in China, but in Oregon, and as an offense would be punishable under the laws of the latter jurisdiction. It occurred after his original entry, after his return from his first visit to China, and long after he had established his residence in this country, and before his return from his second visit. He was never "convicted" of the offense, and the order of deportation necessarily rests upon his "admission" of the facts constituting it.

■■ We do not think that the "admission" referred to in the statute is necessarily limited to admissions made in the course of legal proceedings upon a criminal charge, such, for example, as a plea of guilty. United States ex rel. Rosen v. Williams (C. C. A.) 200 F. 538; Kaneda v. United States (C. C. A.) 278 F. 694; Yoshimasa Nomura v. United States (C. C. A.) 297 F. 191. And it has been repeatedly held that for certain purposes, including the running of the statute of limitations, where an alien has been domiciled in the United States for a period, and, having departed therefrom, again returns, the date of his return may be taken as the date of his "entry." Lewis v. Frick, 233 U. S. 291, 34 S. Ct. 488, 58 L. Ed. 967; Morini v. United States (C. C. A.) 21 F.(2d) 1004; Weedin v. Tayokichi Yamada (C. C. A.) 4 F.(2d) 455; Ex parte Parianos (C. C. A.) 23 F.(2d) 918.

■ While in some respects the Yamada Case is closely analogous, the precise question here presented was not involved. And manifestly, if we assume that the return of appellant, a Chinese merchant lawfully domiciled here under treaty provisions, from a visit to his country, is in law the "entry" of an "alien" under the Immigration Act, and then apply the act literally, results incongruous, if not absurd, ensue. All other facts being the same, had he not made this visit, he would not have been deportable upon his admission of the second marriage. In that case he would be subject to deporta-

tion only after a "conviction" upon a charge of bigamy, and upon the happening of that contingency he would still have the two possible avenues of escape from deportation afforded by a recommendation of the trial judge and executive pardon; whereas, under the government's construction of the act, though he committed the offense within this country, he need not be "convicted," and he cannot invoke the protection of either judicial recommendation or executive clemency. See Weedin v. Hempel (C. C. A.) 28 F.(2d) 603.

"Nothing is better settled than that statutes should receive a sensible construction, such as will effectuate the legislative intention, and, if possible, so as to avoid an unjust or an absurd conclusion." Lau Ow Bew v. United States, 144 U. S. 47, 59, 12 S. Ct. 517, 520 (36 L. Ed. 340). Plainly, by the section under consideration, Congress intended to group all aliens deportable for the commission of a crime, into two classes, and the more reasonable view is that the classification was made with reference to the place where the crime was committed, whether in or out of this country. Such in plain language is the statutory characterization of the first class; the phrase being, "conviction in this country of a crime." True, when it comes to the second class, the phrase used is, "prior to entry;" but we are inclined to think that Congress, probably having in mind only a single entry, used the phrase as synonymous with "out of this country." Unless that view be taken, the language leads to confusion. For example, under the government's construction, appellant's case falls within both classes. The offense with which he is charged was committed "in this country," and it was also committed "prior to entry," if for the purposes of the provision his last return be deemed an "entry." The commission of an offense entails radically different consequences, depending on where it was committed. In case it was committed in this country, deportation is subject to a statute of limitations, is conditioned upon "conviction," and may be defeated by either judicial recommendation or executive clemency, whereas, if committed out of this country, "conviction" is not requisite, nor can resort be had to judicial recommendation or pardon.

Holding as we do that appellant's case falls within the first class, we necessarily conclude that the order of deportation is against the law, and accordingly the judgment below will be reversed, with directions to grant the writ.