## Ex parte KEIZO SHIBATA.

### KEIZO SHIBATA v. CARR, District Director, U. S. Immigration Service.

Circuit Court of Appeals, Ninth Circuit. November 4, 1929.

No. 5848.

J. Edward Keating and Theodore E. Bowen, both of Los Angeles, Cal., for appellant.

Samuel W. McNabb, U. S. Atty., and Emmett E. Doherty, Asst. U. S. Atty., both of Los Angeles, Cal. (Harry E. Blee, U. S. Immigration Service, of Los Angeles, Cal., on the brief), for appellee.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

DIETRICH, Circuit Judge. Bound for the United States from Japan, the appellant, a Japanese alien, arrived at the port of Victoria, B. C., on the steamship Kashima Maru in September, 1919. The circumstances of his first appearance on shore there were such as reasonably to give rise to the suspicion that he had entered clandestinely. A few days later, on October 3, he came to Seattle, and, upon being brought before the Immigration Board of Special Inquiry, he exhibited a passport regular upon its face, and, in so far as is shown, authentic. Put under oath

and interrogated, he testified in some detail that he had formerly come to this country for the purpose of buying dairy stock, and had remained here several years, until 1918. Cautioned that his story might be checked up, after a short hesitation he repudiated it, and then testified that he had shipped and come as a sailor. Later upon the same day, and before the hearing was completed, admitting that this story also was untrue, he stated that he had formerly come as a stowaway.

Deciding that he was "a person likely to become a public charge" because of his conduct in making such false statements under oath, the Board ordered him held for deportation. He was not represented by counsel, but with the assistance of members of the Board he perfected an appeal to the Secretary of Labor. There the action of the Board was affirmed, but, upon an application and showing made by appellant, permission was granted him to remain in the United States for six months upon his giving a bond of $1,000, one of the conditions of which was that he would depart within or at the end of that time. The bond was given, and at the termination of the period, with the consent of the sureties, the time was extended for another six months. Upon the expiration of that period, an application for another extension was denied, and, upon the failure of the sureties to show that appellant had left the country, they were required to pay and paid the penalty of the bond. Presumably because of the permission for a temporary stay, no warrant of deportation was issued, but on April 4, 1921, after the forfeiture of the bond, there was issued a warrant for appellant's arrest charging that "he entered and is within the United States in violation of the sixth proviso of section 3 of said act (Act of February 5, 1917, Rule 11); and that he was a person likely to become a public charge at the time of his entry." Following its issuance, apparently nothing was done for a period of more than six years—why, the record does not clearly disclose and perhaps the reasons are not highly material. During this period appellant's wife had come from Japan and by her two children were born to him in the United States. On September 1, 1927, at San Pedro, Cal., he applied to the immigration authorities for a seaman's identification card, whereupon inquiry was made, the Seattle record was procured, and he was taken into custody under the warrant last referred to.

In any measure of detail to set out what followed would serve no useful purpose. It is sufficient to say that in the course of the proceedings both grounds specified in the warrant of April 4, 1921, were abandoned, and there was substituted the single charge that appellant "has been convicted of or admits the commission of a felony or other crime or misdemeanor involving moral turpitude, to wit, perjury, prior to his entry into the United States." The "perjury" thus referred to admittedly consisted of the testimony given by the appellant before the Board at Seattle on October 3, 1919. Though it was known to all officers concerned that this testimony constituted the only basis for the charge, and touching it there had never been a conviction or prosecution in the criminal courts, and though the local officers very naturally and properly first framed the warrant so that it charged "admitted" alone and not "convicted," strangely enough their superiors at Washington insisted that it be put in the alternative form as above set forth and that the ultimate finding be put into the same form. One of appellant's contentions is that because of this aspect of the charge it is insufficient, and that the finding in the same form is wholly ineffective; and it must be conceded that for that view there is authority in the decided cases. See Ex parte Rocha (D. C.) 30 F.(2d) 823; Ex parte Rodriguez (D. C.) 15 F.(2d) 878; United States v. Sibray (C. C.) 178 F. 144, 148. While the decision of this court in Kostenowczyk v. Nagle (C. C. A.) 18 F.(2d) 834, involves a kindred question, it is not thought to be necessarily opposed to these decisions or to be conclusive in appellee's favor of the question as here presented. To say the least, such a form is under the circumstances highly artificial and is not to be approved; but whether the defect is of such a vital character as to render the proceedings void is a question we need not decide.

At the hearing upon the charge, the immigration officers introduced the Seattle record of appellant's testimony there given and nothing more except the admission by his counsel of his identity. There followed a decision or finding as already explained in the language of the alternative charge, and upon that finding a warrant of deportation was ordered. In the court below an order was entered dismissing applicant's petition for a writ of habeas corpus, and from that order he prosecutes this appeal.

While the point is not discussed in the briefs, it has been suggested that, as a rule, where a witness who has given false testimony retracts it before he leaves the witness stand, it cannot be made the basis of a perjury charge. In section 1044(a) of volume 2 of Bishop on Criminal Law (9th Ed.), the editors say, "The law encourages the correc-

tion of erroneous and even intentionally false statements on the part of the witness, and perjury will not be predicated upon such statements when the witness before the submission of the case, fully corrects his testimony;" and the text is supported by People v. Brill, 100 Misc. Rep. 92, 165 N. Y. S., 65, and People v. Gillette, 126 App. Div. 665, 111 N. Y. S. 133. If that be the law, of course the entire foundation of the deportation warrant is swept away. But, however that may be, if there was perjury at all, the offense was committed in Seattle and hence within the territory of the United States, and that appellant could have been criminally prosecuted in the courts of the United States for the offense there can be no doubt. That being true, under the Immigration Act as we have construed it in Wong Yow v. Weedin (C. C. A.) 33 F.(2d) 377, appellant is subject to deportation for the offense, not in case of admission, but only in case of a conviction, and here admittedly there has been no conviction. It is therefore thought that the deportation warrant is void. In so deciding, we do not by implication hold that the original order of deportation made in 1919 was invalid; it is subject to different considerations. It may be that such propensity or willingness to give false testimony, manifested by an alien when he seeks admission, can properly be taken as the basis of a conclusion that he is likely to engage in criminal practices and consequently to become a "public charge." But this original order is not presently involved. At no time since the permission for a temporary stay was granted have the immigration officers attempted to execute it, and neither in the court below did the appellee, nor does he here, claim any right or authority by reason thereof. And, as already stated, the warrant here challenged rests upon neither of the grounds specified in the warrant of April 4, 1921, under authority of which appellant was taken into custody in 1927.

Reversed, with directions to grant the writ.