## WILSON v. CARR, District Director.
### No. 6042.

Circuit Court of Appeals, Ninth Circuit.
June 2, 1930.

William H. Wylie and H. P. L. Beck, both of San Diego, Cal., for appellant.

Samuel W. McNabb, U. S. Atty., and Gwyn S. Redwine, Asst. U. S. Atty., both of Los Angeles, Cal. (Harry E. Blee, U. S. Immigration Service, of Los Angeles, Cal., on the brief), for appellee.

Before RUDKIN and WILBUR, Circuit Judges, and KERRIGAN, District Judge.

RUDKIN, Circuit Judge.

The appellant, a British subject, first entered the United States about the year 1900. In the year 1908 he pleaded guilty to a charge of petit larceny, in a court of competent jurisdiction in the state of Minnesota, and was sentenced to pay a fine of $50. January 31, 1928, he departed from the United States, entering the Republic of Mexico, at Tia Juana, and returned to the United States on the same day through the port of San Ysidro, Cal. April 5, 1928, he pleaded guilty in the superior court of the state of California, in and for the county of San Diego, to an information charging the crime of grand theft. May 5, 1928, sentence was suspended, probation was granted, under a statute of the state, and the appellant was committed to the charge and supervision of the probation officer of the county. It was further ordered that he wholly abstain from violating any of the laws of the United States, or of the state of California, or any ordinance of any municipality within the state; that he abstain from engaging in criminal or unlawful practices of any kind; that he conduct himself in all respects as a reputable and law-abiding citizen; that he do not depart from the county of San Diego with-

out the consent in writing of one of the judges of the superior court of that county; that he be confined in jail for the first sixty days; that he report to the probation officer in writing; and that he keep and preserve a certified copy of the order furnished him and produce it whenever required so to do by any peace officer of the state. November 19, 1928, a second order was made to the effect that the appellant remain on probation on the former order on condition that he serve one year in the county jail, and it was adjudged that he be punished by imprisonment in the county jail for the period of one year, and that he be then released on probation. The order recites that it was entered on an application to revoke the probation granted May 5, 1928. May 2, 1929, the order of November 19, 1928, was amended nunc pro tunc, and it was then ordered that the appellant remain on probation on the former order, but on condition that he serve one year in the county jail of San Diego, and that he be then released during the further period of probation. The commitment and other papers were amended to conform thereto. March 28, 1929, still another order was entered directing that the appellant be released from that date until the 1st day of July, 1929, with the usual provision against violating the laws of the state, and, finally, an order was entered July 2, 1929, releasing the appellant from custody and again placing him on probation. August 6, 1929, the Secretary of Labor issued his warrant for the deportation of the appellant on the grounds that he had been convicted of a felony or other crime or misdemeanor involving moral turpitude, to wit, petit larceny, prior to entry into the United States, and that he had been sentenced subsequently to May 1, 1917, to imprisonment for a term of one year or more because of conviction in this country of a crime involving moral turpitude, to wit, grand larceny, committed within five years after his entry. A petition for a writ of habeas corpus was denied by the court below, and the case has been brought here by appeal.

We will first consider the second ground of deportation. Section 1203 of the Penal Code of California, as amended in 1927 (St. 1927, p. 1493), provides that probation may be granted, except in certain cases not material here; that, in the order granting probation, the court or judge may suspend the imposing or the execution of sentence, and may direct that such suspension continue for such period of time, not exceeding the possible maximum term of sentence, and upon such terms and conditions as it shall determine; that, in the order granting probation, and as a condition thereof, the court may imprison the defendant in the county jail for a period not exceeding the maximum time fixed by law in the instant case; may fine the defendant, in a sum not to exceed the maximum fine provided by law in such case, or may, in connection with granting probation, impose either imprisonment in the county jail, or fine, or both, or neither; may provide for reparation in proper cases, and may require bond for the faithful observance and performance of any or all of the conditions of probation. It is further provided that the court may revoke and terminate the probation if it appears that the person placed on probation is violating any of the conditions of his probation, or engaging in criminal practices, or has become abandoned to improper associates or a vicious life, and that upon such revocation and termination the court may, if the sentence has been suspended, pronounce judgment for any time within the longest period for which the defendant might have been sentenced, but, if the judgment has been pronounced and the execution thereof has been suspended, the court may revoke such suspension, whereupon the judgment shall be in full force and effect, and the person shall be delivered over to the proper officer to serve his sentence; provided that any period of time which the probationer may have served in jail, or other detention place, or any fine paid under the terms and conditions of probation, shall be taken into consideration as a part of his punishment, and he shall have credit therefor to be deducted from his term of confinement, or from the amount of any fine imposed upon final judgment. It is then provided that every defendant who has fulfilled the conditions of his probation for the entire period thereof, or who shall have been discharged from probation prior to the termination of the period thereof, shall at any time prior to the expiration of the maximum period of punishment for the offense of which he has been convicted, dating from his discharge from probation, or the termination of the period of probation, be permitted by the court to withdraw his plea of guilty and enter a plea of not guilty; or, if he has been convicted after a plea of not guilty, the court shall set aside the verdict of guilty; and, in either case, the court shall thereupon dismiss the accusation or information against such defendant, who shall thereafter be released

from all penalties and disabilities resulting from the offense or crime of which he has been convicted.

■■■ It would seem apparent from the record before us, in the light of the state statute, that the appellant has not been sentenced to imprisonment for a period of one year, or more, because of a conviction of a crime involving moral turpitude. The prosecution against him is still pending in the state court; no sentence has been pronounced for the crime charged, and no sentence will follow in the future, provided he fulfills all the terms and conditions of the probation. In the latter event, the prosecution must eventually be dismissed and the appellant released from all penalties and disabilities resulting from the offense or crime. Indeed, it would seem difficult to find any warrant or justification for the second and third orders committing the appellant to the county jail. Under the statute, the state court may grant probation and prescribe the terms and conditions thereof, but this must be done before judgment. People v. Jones, 87 Cal. App. 482, 262 P. 361. After probation is granted, the powers of the court are strictly limited and defined. It may, during the term of probation, revoke or modify its order of suspension of imposition or execution of sentence; it may, when the ends of justice will be subserved thereby, and when the good conduct and reform of the person on probation warrant it, terminate the period of probation and discharge the person so held, and, upon revocation of the order of probation, it may impose sentence under the information for the offense there charged, giving credit for any time served or fine paid. This would seem to be the extent of the powers conferred. By the original order granting probation, the appellant was committed to the county jail for the period of sixty days, and the statute confers no express authority upon the court to again commit him for a period of one year, or any other period. It would seem equally certain that no such authority can be implied. The appellant is not objecting to the order committing him to jail, because, perhaps, he preferred that to a sentence to the penitentiary; but his mere consent could not confer jurisdiction on the court. Of course, we cannot review the order of the state court in that regard, but, if the order is void on its face for want of jurisdiction, it is the duty of this and every other court to disregard it. For these reasons, we are of opinion that the second ground of deportation cannot be sustained.

■■■ We return now to the first ground of deportation. It is generally conceded that the crime of larceny, in any form, whether grand or petit, involves moral turpitude. Bartos v. United States District Court (C. C. A.) 19 F.(2d) 722; United States v. Kellogg, 58 App. D. C. 360, 30 F.(2d) 984; Tillinghast v. Edmead (C. C. A.) 31 F.(2d) 81. But the question remains whether an alien who has lawfully and permanently resided in the United States for a period of twenty years after his conviction of the crime of petit larceny, or other crime, should be deported simply because, after the expiration of that period, he stepped across the border into a foreign country, returning on the same day. Upon this question there is a conflict of authority, and an apparent lack of harmony in our own decisions.

In Weedin v. Tayokichi Yamada (C. C. A.) 4 F.(2d) 455, an order of deportation was upheld, based upon a conviction in this country before the last entry of the alien, but the only questions raised in this court were the statute of limitations and the character of the crime. But in Bendel v. Nagle (C. C. A.) 17 F.(2d) 719, 57 A. L. R. 1129, it was explicitly ruled that an alien might be deported for the commission of a crime involving moral turpitude, committed in this country before his last entry. In Wong Yow v. Weedin (C. C. A.) 33 F.(2d) 377, however, it was held that an alien Chinese could not be deported because of an admission that he had committed the crime of bigamy in this country prior to his last application to enter. See, also, Ex parte Keizo Shibata (C. C. A.) 35 F.(2d) 636; United States v. Day (C. C. A.) 35 F.(2d) 284. In United States v. Commissioner of Immigration (D. C.) 36 F.(2d) 239, it was held that an alien permanently and lawfully residing in the United States could not be deported, on his return from a temporary visit abroad, for crimes involving moral turpitude committed by him in this country, and that section 19 of the Immigration Act of 1917 (8 USCA § 155) was only intended to exclude aliens guilty of crimes not punishable within the jurisdiction of the United States.

On the facts here presented, the appellant could not be deported for a crime committed in 1908, had he remained here, because of the lapse of time, and the commission of that offense would be no obstacle to his naturalization, because he would only be required to establish his good moral character for a period of five years prior to the date of his application. In other words, the law

in its charity has condoned the offense for all practical purposes, and it seems shocking that an alien should be deported for a crime committed in this country, at any time during his natural life, simply because years later he crossed the international boundary line for some temporary purpose. We do not think that Congress so intended.

The order of the court below is reversed.