BROWNE v. ZURBRICK, Director of Immigration, et al.

No. 5682.

Circuit Court of Appeals, Sixth Circuit.

Dec. 11, 1930.

Catherine G. Herlehy, of Detroit, Mich., for appellant.

Stephen J. Carey, of Detroit, Mich. (John R. Watkins, of Detroit, Mich., on the brief), for appellees.

Before DENISON, MOORMAN, and HICKS, Circuit Judges.

DENISON, Circuit Judge.

In this habeas corpus appeal, as in other similar cases, we find a very unsatisfactory record. The complete record before the Commissioner of Immigration was used and referred to on the hearing before the District Judge; but so little of it is included in the record made up for us that we frequently cannot fully understand the questions involved. We have therefore in these cases directed, as we did in this case, that a complete certified copy of the Commissioner's record be filed in this court as and for a part of the return to the appeal, and that it need not be printed, unless specially ordered.

From such complete record, it appears that Browne, by birth a Canadian, entered the United States lawfully in 1919, at the age of twenty. He established and maintained a residence in Detroit, and continuously had lucrative employment, serving in a clerical position—salary $2,400. In 1928 he was arrested and convicted, under a Michigan statute, for indecent liberties with a girl of fifteen. Under Michigan procedure, he was not imprisoned, but was placed on probation for two years, and he was continued in his regular employment. In February, 1929, he desired to visit relatives in Canada. His probation officer gave consent, he had frequently spent his vacations in Canada, and he supposed he would be allowed to re-enter. After about ten days he returned, and represented to the inspector on this entry that he had been a resident of the United States for ten years and in Canada only on a brief visit. A few days later he was arrested upon a de-portation charge, alleging that, at the time of his second entry, he was a person likely to become a public charge, and further that he had been convicted of or admitted the commission of a crime involving moral turpitude, prior to this second entry. There was the usual hearing before an inspector; the finding was against him; the Board of Review approved; and a deportation warrant issued, but based only upon the conviction. His petition for habeas corpus was dismissed by the court below.

One general aspect deserves attention before turning to the particular situation. During a long period, with reference to immigration and exclusion acts, a course of judicial construction developed, approving, or rather condoning, great laxity in the preservation to an alien of rights which in the case of a citizen would be considered essential to due process of law. We call attention to the recent comments of Judge Learned Hand to this effect in Iorio v. Day, Com'r (C. C. A.) 34 F.(2d) 920, at page 922. By the Act of March 4, 1929, § 1 (a–c), as amended by Act June 24, 1929 (8 USCA § 180), the alien is forever barred from re-entry, even if after arrest he is allowed to and does go out voluntarily. Not only that, but if he returns he is to be imprisoned as a felon. Thus deportation becomes as to aliens who have established a domicile here a decree of perpetual banishment and exile—regardless of fixed family and business ties and connections; and it more clearly carries a heavy burden of "possible human woe." Judge Hough (U. S. ex rel. Karamian v. Curran (C. C. A.) 16 F. (2d) 958, at page 961. Whether, in view of this change in the results of a deportation order, the courts will construe more liberally the due process rights of a resident alien, is a question that will eventually call for consideration; here it is enough to say that, in applying the supposed statutory grounds of deportation to this alien, long rightfully domiciled here, the application must be clear, and cannot rest on doubtful interpretation.

There was no evidence tending to sustain the allegation that Browne was likely to become a public charge. Deportation was not ordered on this ground; but in a proper case we might permit a new warrant, to comply with the proofs, and hold the proceedings for that purpose. The matter is therefore not irrelevant. The government's contention on this point rests solely upon the theory that one who is guilty of crime, and therefore likely to be convicted for it and to be impris-

oned at the public expense, is ipso facto likely to become a public charge. There is authority to this effect; but, as applicable to the facts of this case, we think the contrary rule supported by the better authority and the stronger reason. This court in Lam Fung Yen v. Frick, 233 F. 393, 396, said that the language of the act was not limited to paupers or to those likely to become such; but this general language was used with reference to a particular exception, and did not necessarily imply any other exception. The alien there was a Chinese gambler, with no professed means of support, except the practice of his occupation as he traveled from place to place. He was of the class who are, as Judge Knappen said, "likely to become periodically the inmates of prisons." There is no occasion to modify this holding, when we have now to consider the case of a single crime, not of the continuing type, and involving no prospect of the prison habit. The question was quite fully discussed and reviewed by the Second C. C. A. in Iorio v. Day, supra. In so far as that opinion expresses dissent from our Lam Fung Yen Case, we are not convinced; but we agree with its reasoning and conclusion to the extent that guilt of a crime which might upon conviction bring imprisonment does not of itself establish the excludable status. The decision of the Fifth C. C. A. in Lisotta v. U. S., 3 F.(2d) 108, is in accord; and, though it was by Judge Hand distinguished from the Iorio Case because there had been in the Lisotta Case only one conviction, it cannot be in that way distinguished from our present case. The same limited view of the phrase, "likely to become a public charge," was later affirmed by the same court (Fifth C. C. A.) in Coykendall v. Skrmetta, 22 F. (2d) 120, 121, after careful discussion. The case in the Eighth C. C. A.—Medich v. Burmaster, 24 F.(2d) 57, 59—is in point contra, though subject to the criticism made by Judge Hand; but it depends only upon the authority of certain District Court cases, and does not discuss the principles of statutory construction which seem to us to lead to the other result.

In the present case we have an additional feature. If reference is to be had to the conviction, as indicating liability to imprisonment, the reference cannot stop halfway; and the full facts show, not imprisonment and a charge upon the public, but a refusal by the state of Michigan to inflict that penalty or create that situation.

■ There is also a claim that Browne's nervous system was sufficiently below par to support the inference that he might become a public burden. This claim rests upon an uncertified copy of an unsworn statement by some psychological "investigator." Manifestly, it could not be considered, even if it were intelligible.

To support deportation it was necessary that the crime should have involved moral turpitude. There may well be cases where the broad definition of a statute may include offenses which are and others which are not of this character, and where that allocation will depend upon the facts of the particular case. So far as this challenge arises here, we pass it by without decision, thinking it not controlling.

■■ At the time of this conviction, Browne had been a resident of the United States for eight years, and the conviction was therefore three years beyond the limit within which the statute fixes deportation as a result. It is also evident, though perhaps not important, that, if the conviction had been within the five years, the court which allowed probation would also certainly have recommended against, and thereby barred, deportation. 8 USCA § 155. We have then a case where, although Congress in one clause has declared that a particular conviction did not justify deportation, it has, in another clause—if the Government's contention be correct—ordered deportation because of the same conviction. It is true that there has been an intervening departure and re-entry, and that the alien's rights and burdens, for most purposes, attend and depend upon the second entry (Lewis v. Frick, 233 U. S. 291, 34 S. Ct. 488, 58 L. Ed. 967); but that concession does not reach the point. The reasonable construction of these two clauses, so that each may have its appropriate force, is that the deportation which automatically follows a conviction is the prospective consequence of a crime and conviction in this country, while the deportation which follows conviction or admission of a crime committed before entry refers to a conviction (if not also to a crime) occurring outside of this country. The statute has been in this particular several times before the Circuit Court of Appeals of the Ninth Circuit. In Weedin v. Yamada, 4 F. (2d) 455, there had been a conviction in this country prior to the second entry. It was considered sufficient to support the deportation, but the question now before us was not

934

raised or considered. In Bendel v. Nagle (C. C. A.) 17 F.(2d) 719, 57 A. L. R. 1129, there had been a previous conviction, and the holding, though the discussion is summary, is clear that it was immaterial whether the conviction had been in this country or abroad. In Wong Yow v. Weedin (C. C. A.) 33 F.(2d) 377, the crime during the former residence here was admitted. In a careful discussion, this was thought not sufficient to justify deportation, and because the crime had not been committed abroad. The case does not mention Bendel v. Nagle, nor suggest any distinction. What is said would seem to apply to a conviction as well as to an admission, and to indicate that the vital distinction is between crimes in this country and crimes abroad. In Keizo-Shibata v. Carr (C. C. A.) 35 F.(2d) 636, the case involved an admission, not a conviction, and the court affirmed and applied the Wong Yow Case, but pointed out and stressed the distinction between an admission and a conviction—thus seemingly approving Bendel v. Nagle, although not mentioning that case. We are compelled to think that upon this point there is no sound distinction between an admission and a conviction, and that the view of the statute taken by that court in the Wong Yow and the Keizo-Shibata Cases necessarily leads to the view that the conviction prior to the second entry, which will bar that entry, must have been abroad and not in the United States.

In Linklater v. Commissioner (D. C. N. Y.) 36 F.(2d) 239, the subject is considered in a careful opinion by Judge Woolsey, and, although the crime was there shown by admission, yet the discussion applies as well to a conviction; and we find ourselves in accord with that view of the construction of the statute.

In passing, it should be noted that, if there is, under such circumstances, any real distinction between a conviction and an admission, the warrant of arrest is ineffective upon this point, because it makes this charge only in the alternative, "has admitted or been convicted"; and such a charge is a nullity. Ex parte Rodriguez (D. C. Tex.) 15 F.(2d) 878; Keizo-Shibata v. Carr, supra, at page 637 of 35 F.(2d). Only upon the theory that there is no real difference in effect between admission and conviction can the lack of a distinct charge of either be overlooked.

Our conclusion is that the judgment below should be reversed and the petitioner discharged.