**NAGLE, Commissioner of Immigration, v. LIM FOON.**

No. 6200.

Circuit Court of Appeals, Ninth Circuit.
March 16, 1931.

Geo. J. Hatfield, U. S. Atty., and Albert C. Wollenberg, Asst. U. S. Atty., both of San Francisco, Cal., for appellant.

Stephen M. White, of San Francisco, Cal., for appellee.

Before RUDKIN and WILBUR, Circuit Judges, and NORCROSS, District Judge.

NORCROSS, District Judge.

This is an appeal from an order and judgment granting a writ of habeas corpus and discharging the petitioner, appellee, from the custody of appellant.

The proceeding was heard upon the allegations of the petition. The salient facts therein alleged are as follows:

The petitioner is of Chinese descent, born in China. In June, 1908, he was admitted to the United States by the immigration authorities of the port of San Francisco under the status of a minor son of a lawfully domiciled Chinese merchant. In June, 1915, the petitioner pleaded guilty to the crime of murder in the first degree before the superior court of San Joaquin county, Cal., and was by that court sentenced to life imprisonment at the State Penitentiary at San Quentin, from which institution he was paroled in 1925. From the date of his admission in 1908, petitioner resided and remained in the United States until November, 1927, when he departed through the port of San Francisco for a temporary visit to China. At the time of his departure he was in possession of a so-called laborer's return certificate, form 432, issued to him by the immigration authorities for the Port of San Francisco on the 18th day of October, 1927. Prior to the issuance of such certificate, the matter of petitioner's prior conviction, prison service, and parole was investigated and known to the authorities issuing the certificate. In July, 1928, petitioner returned from his visit to China to the port of San Francisco, and, upon presenting his said certificate to the immigration authorities, was permitted to enter the United States. Following his admission last mentioned, petitioner continued to reside and remain in the United States until September 21, 1929, when he departed therefrom through the port of San Francisco on a round trip voyage on the steamship Malolo as a member of its crew. At the time of his last-mentioned departure, he was in possession of a so-called laborer's return certificate, form 432, issued to him by the immigration authorities. The steamship Malolo was a vessel of American registry and ownership. The round trip voyage was completed on the 20th day of

December, 1929. Upon arrival at the port of San Francisco, petitioner was taken into custody by the immigration authorities. Upon a hearing before the Board of Special Inquiry, he was denied admission and ordered deported to China upon the following ground:

"That he is an alien and not admissible to the United States for the reason that he is one of a class who has been convicted of and has admitted having committed a felony or other crime or misdemeanor involving moral turpitude, to-wit: murder in the first degree, and that he was convicted of said crime and sentenced to serve for the period of his natural life, in the State Prison, of San Quentin, as contemplated in Section 3 of the Immigration Act of 1917."

Upon appeal to the Secretary of Labor, the order of deportation was affirmed.

■■■ Three questions of law are presented upon the record, and they will be considered as and in the order stated in appellant's brief.

"(1) Does a laborer's return certificate under the Chinese Exclusion Act, exempt the holder thereof from the provisions of the General Immigration Act?"

In the case of Hee Fuk Yuen v. White, 273 F. 10, 13, this court had under consideration the question whether a merchant's return certificate was conclusive of the question of right to readmission. From the opinion in that case we quote the following excerpt: "The purpose of readmission certificates ·is to avoid detention and to facilitate the readmission of Chinese aliens who are entitled to return to the United States under the Chinese Exclusion Laws. They have no binding effect as adjudications of the right to return."

In addition to the authorities cited in the Hee Fuk Yuen Case may be cited the case of Hom Yuen v. United States, 214 F. 57, 59, wherein the Circuit Court of Appeals for the Second Circuit in its opinion stated: "The proposition that there is any finality about the 'return certificate' is wholly unfounded."

It is also well settled that the general immigration laws are coexistent with the Chinese Exclusion Acts, and alien Chinese are subject also to the provisions thereof. United States v. Butt, 254 U. S. 38, 41 S. Ct. 37, 65 L. Ed. 119; United States v. Wong You, 223 U. S. 67, 32 S. Ct. 195, 56 L. Ed. 354.

The question considered is answered in the negative.

"(2) Is the excluding provision of Section 3 of the Immigration Act of February 5, 1917, relating to aliens convicted of a crime, limited to aliens who were convicted of a crime outside the United States?"

Section 3 of the Immigration Act of February 5, 1917 (8 USCA § 136), provides as follows: "That the following classes of aliens shall be excluded from admission into the United States: * * * persons who have been convicted of or admit having committed a felony or other crime or misdemeanor involving moral turpitude."

■■■ Taking the language of section 3 by itself, it may be conceded that it is sufficiently general to be inclusive of aliens convicted of a crime either within or without the United States. The section, however, is to be construed with reference to the act as a whole and the purposes occasioning its enactment. Wong Yow v. Weedin (C. C. A.) 33 F.(2d) 377. This and other sections of the Act of February 5, 1917, are re-enactments with slight changes or modifications of prior legislation on the same subject. This statute also may be said to have been enacted in the light of the construction placed on prior acts by the courts. Looe Shee v. North (C. C. A.) 170 F. 566.

Considering the purpose of such enactments, this court, in Haw Moy v. North, 183 F. 89, 91, said:

"The general object of the immigration statutes is not only to prevent the admission of undesirable and forbidden classes of aliens, but to remove from this country all such aliens who may have succeeded in effecting an entry. That Congress has power to legislate as to both classes of aliens has been settled by many decisions of the courts and is not now open to investigation. Each class is equally undesirable, and each is equally inimical to the best interests of the country at large. In the Immigration Act of February 20, 1907 (34 Stat. 898), which is the latest expression of the legislative will upon the subject, Congress has provided, in section 2, that certain classes of aliens therein enumerated shall be excluded from admission to the United States. * * * Sections 19, 20, and 21 provide for the deportation of aliens found in the United States in violation of law. * * *

"It will be seen from this legislation that Congress intended to exercise its admitted jurisdiction not only in excluding defective and undesirable aliens who might be seeking entry into this country, but also to deport those who, having entered, were found to be unlawfully here."

Section 19 of the Act of 1917 (8 USCA § 155), provides as follows:

" * * * any alien who, after February

54

5, 1917, is sentenced to imprisonment for a term of one year or more because of conviction in this country of a crime involving moral turpitude, committed within five years after the entry of the alien to the United States * * * ; any alien who was convicted, or who admits the commission, prior to entry, of a felony or other crime or misdemeanor involving moral turpitude; * * * shall, upon the warrant of the Secretary of Labor, be taken into custody and deported. * * * The provision of this section respecting the deportation of aliens convicted of a crime involving moral turpitude shall not apply to one who has been pardoned * * * ; nor shall any alien convicted as aforesaid be deported until after the termination of his imprisonment."

It is clear that the purpose of section 3 was to exclude certain classes of aliens therein described. It is also clear from the provisions of section 19 that its purpose was to provide for deportation of certain aliens for certain reasons. No reason appears why an alien who has committed an offense within the United States involving moral turpitude subsequent to five years' lawful entry and residence is not subject to deportation, and yet may be subject to a denial of entry upon a return permit and deported when that fact appears. If he committed such an offense without the United States, it is immaterial when the same was committed; he is subject to deportation. The right to deport in the case of an alien denied admission is incident to such denial. In the case of the appellee, however, there is in section 19 an express prohibition of his deportation until after termination of imprisonment. A mere parole is not a termination of imprisonment. It is subject to revocation at any time. In this case the court below remanded the appellee "to the custody of the prison authorities of the State of California." The two sections should be construed in the light of each other, and so construed section 3 (8 USCA § 136 (e) is not inclusive of a felony or other crime or misdemeanor involving moral turpitude committed within the United States subsequent to five years after an original lawful entry. See Wilson v. Carr (C. C. A.) 41 F.(2d) 704.

"(3) Is an alien seaman subject to the excluding provisions of section 3 of the Immigration Act of February 5, 1917, upon his return from a round trip foreign on an American vessel?"

This question is answered in the negative by the decision of this court in Weedin v. Banzo Okada, 2 F.(2d) 321.

The case of United States v. Day, 279 U. S. 398, 49 S. Ct. 354, 73 L. Ed. 758, relied on by appellant, is not in conflict with the Weedin Case. The court in that case expressly stated that it was dealing only with the question of entry.

Order and judgment affirmed.