**UNITED STATES ex rel. GREIFENHAUN v. DAY, Commissioner of Immigration.**

District Court, S. D. New York.

May 6, 1931.

M. Michael Edelstein, of New York City, for relator.

George Z. Medalie, U. S. Atty., of New York City (Vito Marcantonio, of New York City, of counsel), for respondent.

WOOLSEY, District Judge.

This writ is dismissed.

I. The relator, a resident alien, is a German national, who was duly admitted to the United States ex steamship Noordam on December 16, 1922.

In August, 1930, the relator had been living apart from his wife about three years, although he was regularly contributing to her support, apparently under an order of a domestic relations court in the Bronx where he resided.

The relator was employed by G. M. Fauser, Inc., of 425 Fourth Avenue, New York City, as a designer of wall papers and cretonnes.

On August 11, 1930, he started on a motor trip to the Canadian Rockies to make photographs which were to be used to form the basis of some of his designs. He took with him, apparently with her mother's consent, a young unmarried woman also employed by his firm, with whom he had sexual intercourse commencing on their first night out from New York.

He and his companion entered Canada August 24th via Babb and Piegan, Mont., and were examined and passed by the Canadian authorities at Carway, British Columbia.

On August 30th, on their way home, the relator and his companion tried to enter the United States at Gateway, Mont. They were there examined by a Board of Special Inquiry of the Immigration Service. The young woman freely admitted that she and the relator had had sexual intercourse throughout their trip. After first denying such intercourse, the relator—on being faced by her admissions—at once admitted the fact. As a result of this examination, both the relator and his companion were excluded.

The exclusion of the young woman, who claims to be a native-born citizen of the United States, was, of course, conditional on her not being able to prove her citizenship and is not of interest here.

The relator was excluded (1) as likely to become a public charge; (2) as admitting he was bringing in a woman for immoral purposes; and (3) for committing perjury (regarding his relations with his companion) in his examination for admission.

On being advised that he might appeal his exclusion he stated that he did not wish to appeal—apparently because he thought an appeal would be fruitless.

He was then advised as follows: "You are further advised that should you gain entry into the United States by making false and misleading statements or by surreptitious entry that you would be subject to arrest, prosecution and deportation. You are further advised that you are debarred. from entering the United States for a period of one year and should you desire to enter the United States prior to this time that you must first have the permission of the Secretary of Labor, Washington, D. C. before you can reapply for admission."

Having been thus excluded and warned, the relator and his companion returned across the Canadian border, and on the next day, August 31, 1930, entered the United States at Babb, Mont., after submitting to a very casual examination in which they did not say anything about their exclusion at Gateway, Mont., on the day previous.

The Department of Labor is about to deport the relator under section 19 of the Act of February 5, 1917, 8 USCA § 155 (1) on the ground that he admittedly entered the United States at Babb, Mont., on August 31st, without having been given leave to apply for such admission within one year from his exclusion on August 30th at Gateway, and (2) on the ground that he entered the United States for an immoral purpose. Cf. Act of February 5, 1917, § 3 (8 USCA § 136) and Immigration Rules of January 1, 1930, subdivision P, paragraph 1.

II. This is a case in which the punishment may seem, on first impression, to be disproportionate to the crime, but this is not the fact.

As it did not appear on the examination of the relator at Gateway, Mont., that either adultery or fornication outside of marriage is a crime under the law either of the Dominion of Canada, or of Saskatchewan, or British Columbia, the provinces thereof through which he passed, if the relator had been in position to have appealed his exclusion at Gateway, he would probably have come within my ruling in U. S. ex rel. Linklater v. Commissioner of Immigration, 36 F.(2d) 239, 241–242, in which I followed the decision of the Circuit Court of Appeals for the Ninth Circuit in Wong Yow v. Weedin, 33 F.(2d) 377, 379, and held that a crime committed in this country, and so presumably punishable here, was not ground, under section 19 of the Act of February 5, 1917, for the deportation of an alien lawfully resident here who had returned from a temporary sojourn in Canada.

Certainly it was not shown at the examination in Gateway that the relator was likely to become a public charge, and his first denial of sex relations with his companion may well be considered venial, in view of his prompt admission thereof, as soon as he found that his companion, by her own evidence, had waived the social estoppel against his telling of their intimacy.

It is doubtful also whether he could have been held to have been bringing in a woman for immoral purposes, because, first, they were sharing expenses, and, second, proof of a liaison hardly comes within such a general allegation.

But an appeal was not taken by the relator, not only because he may not have been in position to do so, but also apparently because he had in mind doing what he actually did next day, namely, coming over our border at a possibly less inhospitable port of entry, in spite of the warning he had received that he must appeal, or remain outside the United States until a year had elapsed unless he got leave from the Department to apply for admission meantime.

Thereupon he left Gateway, went through Canada about eighty miles eastward, and on August 31st passed the inspector at Babb, Mont., without advising him of the occurrence at Gateway. Thus he fraudulently secured admission by his own lack of candor and owing to the ignorance of the authorities at Babb of what had happened at Gateway.

Courts must sternly set their faces against such flouting of our laws and regulations.

I think the hearing afforded to the relator was fair.

It follows that, as the first ground of deportation has been not only proved but admitted, it becomes unnecessary to discuss or consider the second ground.

Consequently the relator must be deported.