**UNITED STATES ex rel. FONTAN v. UHL, District Director.**

District Court, S. D. New York.
Sept. 24, 1936.

J. Irving Weissman, of Brooklyn, N. Y., for relator.

Lamar Hardy, U. S. Atty., of New York City (William F. Young, of New York City, of counsel), for respondent.

MANDELBAUM, District Judge.

The relator seeks to sustain a writ of habeas corpus, and thereby prevent his deportation.

The government charges the relator with having been convicted of crimes involving moral turpitude, prior to his entry in this country, and is therefore an alien subject to deportation pursuant to section 155 of title 8 of the United States Code Annotated. That portion of the aforesaid section relative to the situation at bar reads as follows: "Any alien who was convicted, or who admits the commission, prior to entry, of a felony or other crime or misdemeanor involving moral turpitude * * * shall, upon the warrant of the Secretary of Labor, be taken into custody and deported."

The relator challenges the competency of the proof of his alleged convictions or that he admitted the commission of any crime.

The evidence offered by the government to prove the prior convictions of the relator for theft alleged to have been committed in 1912, 1915, 1916, and 1920 consisted merely of a communication to that effect from the French Minister of Foreign Affairs. Although the relator unequivocally denied the truth of the statements therein contained, the government offered no further proof in that direction. This evidence is insufficient to warrant deportation, even in a proceeding of this character. See U. S. ex rel. Castro v. Williams (D.C.) 203 F. 155, 156; Svarney v. U. S. (C.C.A.) 7 F.(2d) 515.

As to the conviction of the relator in Algeria in 1915 for which crime the relator admits having served three months in prison, a more serious question is presented.

It seems that he was convicted for not having paid his ship passage from Marseille, France, to Algeria. This appears to be nothing more than a conviction for being what is commonly termed a "stowaway."

Under section 155, the relator is not deportable unless the crime involves *moral turpitude*. Although the French government has designated this crime as robbery, we should disregard the name given to it and look rather to the inherent nature of the offense to determine whether or not it involves moral turpitude within the meaning of the Immigration Act. See United States ex rel. Zaffarano v. Corsi (C.C.A.) 63 F.(2d) 757, 758.

In Ng Sui Wing v. United States (C.C.A.) 46 F.(2d) 755, the term "moral turpitude" is defined as "an act of baseness, vileness, or depravity in the private and social duties" owing to fellow men, or to society in general, contrary to accepted and customary rules.

It does not appear that the failure on the part of the relator to pay his ship fare was coupled with any larceny in obtaining his passage or that any passage ticket was stolen by the relator. Section 1292 of the Penal Law of the State of New York (Consol.Laws, c. 40).

I am therefore constrained to hold, in the absence of such proof, that the crime of being a stowaway is not one involving moral turpitude within the meaning of the Immigration Act.

The court cannot help but note the concession of the Immigration Authorities that the relator has, during the course of his stay in this country, led an exemplary life, has married an American citizen, and is conducting himself as a proper person.

Writ sustained, and relator discharged.