219 F.2d 249
 UNITED STATES of America, ex rel. Daniel VENTURA, Relator-Appellant,
v.
Edward J. SHAUGHNESSY, District Director of Immigration and Naturalization, his subordinates and agents, Respondents-Appellees.
 No. 105.
 Docket 23206.
 United States Court of Appeals, Second Circuit.
 Argued January 6, 1955.
 Decided January 31, 1955.
 
 Caputi & Caputi, New York City, for appellant; Robert R. Caputi, Brooklyn, N. Y., and Sebastian P. Caputi, New York City, of counsel.
 J. Edward Lumbard, U. S. Atty., New York City, for appellees; Harold R. Tyler, Jr., Asst. U. S. Atty., New York City, and Lester Friedman, Atty., Immigration and Naturalization Service, Department of Justice, Brooklyn, N. Y., of counsel.
 Before SWAN and MEDINA, Circuit Judges, and DIMOCK, District Judge.
 SWAN, Circuit Judge.
 
 
 1
 This is an appeal from the dismissal of a writ of habeas corpus whereby the relator sought discharge from custody under an administrative warrant of deportation issued February 10, 1954. The relator is an alien of Portuguese nationality who came to the United States as a stowaway and surreptitiously entered the country without inspection and without an immigration visa on March 20, 1951. He concedes that on these grounds he is subject to deportation. He was also found deportable on an additional charge lodged by the special inquiry officer, namely, that prior to entry he had been convicted in Portugal of a crime involving moral turpitude. An appeal from the decision of the special inquiry officer was dismissed by the Board of Immigration Appeals, which also denied a petition for reconsideration. The relator's writ of habeas corpus attacks only the administrative finding that before entry he had been convicted of a crime involving moral turpitude.
 
 
 2
 The appeal presents a very narrow issue. Section 242(b) (4) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1252(b) (4) provides
 
 
 3
 "(4) no decision of deportability shall be valid unless it is based upon reasonable, substantial, and probative evidence."
 
 
 4
 The appellant contends that this standard was not satisfied in respect to the additional charge of prior conviction of a crime involving moral turpitude.
 
 
 5
 Whether he is deportable on this charge is a matter of importance to the appellant because in July 1951 he was legally married to a native-born citizen of the United States and he is now the father of a native-born child of that marriage. On the basis of these facts he applied for suspension of deportation or for voluntary departure. His application was denied on the ground that sustaining the additional charge made deportation mandatory.[1]
 
 
 6
 The relevant evidence as to the issue before us consists of exhibits 2 and 3 introduced by the special inquiry officer, and testimony of the appellant at the administrative hearing. It is undisputed that the appellant was convicted of a crime in Portugal prior to his entry into the United States. Exhibit 2 is a sworn statement by him in which he stated, in reply to question 14, that he had been arrested "In Jan. 1948 in Ovar, Portugal — Charge: Receiving Stolen Goods Served 2 years in jail." Exhibit 3 is a certificate headed "Ministry of Justice, Bureau of Identification Services, District of Ovar, Certificate from Criminal Register," and signed by "The Chief of the Central Section." It certifies "that in the records on file in the Archive of the Criminal Register of this District regarding Daniel Ventura * * * there appears the following: * * *." Then followed a recital of proceedings which resulted in the conviction of Daniel Ventura "as culprit of the crimes provided for" in specified articles of the Penal Code, and the imposition of a two-year sentence in the penitentiary, which he is stated to have served.
 
 
 7
 Accompanying the certificate of conviction, and introduced as part of exhibit 3, was a translation by the Portuguese consul general in New York of Articles 426, Nos. 2 and 4, and Article 428, Nos. 2 and 4, of the Penal Code, referred to in the certificate. No objection was made to receipt of exhibit 3 in evidence, although the alien was represented by counsel of his own choice. The alien identified the documents as referring to himself and testified that he pleaded guilty during the trial. He further testified that his relation to the crime was buying two sacks of corn meal from a servant who had stolen them, but that he did not know they had been stolen when he took possession of them. The special inquiry officer found on the basis of all the evidence that on March 22, 1948 the alien was convicted in Ovar, Portugal of the crime of theft.
 
 
 8
 We see no error in the administrative proceedings. There was before the hearing officer, put in evidence without objection, an extract from "the records on file in the Archive of the Criminal Register" of the District of Ovar, Portugal, certified by the Chief of the Central Section, Bureau of Identification Services, Ministry of Justice. The extract states that Daniel Ventura was convicted of, and served a two-year sentence for, crimes "provided for" in enumerated articles and paragraphs of the Penal Code. The appellant admitted that the Daniel Ventura referred to in the certificate was himself. A translation of the articles shows that they define a crime very similar to what we call burglary or larceny; and there is nothing in the provisions as translated to support the appellant's contention that he might have been convicted of buying stolen goods, even if ignorant that they had been stolen. The appellant's characterization of the certificate as "a letter from the police department, not certified, not sworn to, and not authenticated" is as unjustified as is his reliance upon United States ex rel. Fontan v. Uhl, D.C.N.Y., 16 F.Supp. 428 as an authority in point. There the evidence offered to prove prior convictions of thefts "consisted merely of a communication to that effect from the French Minister of Foreign Affairs." Here the communication was from an officer of the Ministry of Justice who certified a copy of the records of the Criminal Register. Those records obviously contain the judicial history of the person prosecuted for crime, and concededly the appellant was the person referred to. The certified extract of such record, despite the appellant's testimony that he only received stolen goods in ignorance that they had been stolen, was "reasonable, substantial and probative evidence," that he was convicted of a crime involving moral turpitude, namely, theft. That theft involves moral turpitude cannot be doubted. United States ex rel. Meyer v. Day, 2 Cir., 54 F.2d 336.
 
 
 9
 In reaching the conclusion that the judgment must be affirmed we have assumed arguendo, but we express no opinion on the matter, that the admissions in the alien's affidavit submitted to the Board of Immigration Appeals in support of his motion for reconsideration are not to be used against him on this appeal, because the affidavit was not before the special inquiry officer. In that affidavit he admitted that he "was convicted and sentenced for the crime of theft by the criminal court in Portugal," and that he purchased the corn "knowing same to have been stolen"; but he urged in expiation that he did so to feed his family.
 
 
 10
 Judgment affirmed.
 
 
 
 Notes:
 
 
 [1]
 This conclusion was based upon the provisions of section 19(d) of the Immigration Act of 1917, formerly 8 U.S.C.A. § 155(d), which was preserved as to pending proceedings by section 405(a) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1101 note