Margarete ZGODDA

v.

John W. HOLLAND, District Director of Immigration and Naturalization, Respondent.

Civ. A. No. 27038.

United States District Court
E. D. Pennsylvania.

June 20, 1960.

Barnie F. Winkelman, Philadelphia, Pa., for plaintiff.

Walter E. Alessandroni, U. S. Atty., Mabel G. Turner, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

KRAFT, District Judge.

This is an action for review of an order of deportation. Upon the filing of the petition for review, all proceedings under the order were stayed until final disposition of the case.

Respondent has filed a motion to dismiss the petition for review, or, in the alternative, for summary judgment.

Petitioner, an unmarried woman about thirty-five years old, is a native and citizen of Germany who presently resides in Philadelphia, Pennsylvania. She was admitted to the United States for permanent residence on May 24, 1957, upon surrender of an immigrant visa issued on May 9, 1957 by the Consul in Toronto, Ontario, Canada.

In October 1958, the Immigration and Naturalization Service caused an order to be served upon the petitioner to show cause why she should not be deported and gave her notice of a hearing thereon. The order averred, inter alia:

"4. You were convicted at the Lower Court of Bremen, Germany on December 6, 1944 for two separate offenses of Simple Larceny and on December 12, 1944 for the offense of Concealing Stolen Goods;

"5. You were admitted to the United States with an immigrant visa procured by you at the American Consulate, Toronto, Canada, on May 9, 1957;

"6. You failed to disclose in the application for your immigrant visa that you had been arrested and convicted for the offense of Simple Larceny and Concealing Stolen Goods and that you had been in prison;

"7. You failed to disclose in the application for your immigrant visa that you had previously applied for an immigrant visa at the American Consulate, Hamburg, Germany and was (sic) refused a visa because you had been in prison."

The order also informed the petitioner that she was subject to be deported pursuant to Section 241(a) (1) of the Immigration and Nationality Act,[1] in that at the time of her entry she was excludable under (1) Section 212(a) (9); and (2) Section 212(a) (19)[2] thereof.

Petitioner appeared without counsel at the hearing before the Special Inquiry Officer. She freely admitted the truth of the above averments. However, the records of her convictions in Germany were not introduced into evidence. Petitioner conceded deportability on the first charge contained in the show-cause order. She did not concede deportability on the second charge, based upon her excludability at the time of entry as an alien who procured a visa by fraud or wilful misrepresentation of a material fact. She insisted that she did not reveal her convictions in her application for a visa because she believed that these convictions were expunged from the police records in Germany after ten

years of "clear" record, and that she did, in fact, receive a negative police record from Germany.

Petitioner testified that she had become engaged to marry an American soldier in Germany; that he left Germany and returned to his home in Philadelphia in 1955; that she intended to come to the United States, at his repeated and urgent solicitations, in order to marry him; that, when she arrived in Canada, she received a letter from her fiance advising her of his recent marriage to another. She further testified that she has not committed any offenses other than those charged in the order to show cause, and that she has been steadily and gainfully employed since her arrival in the United States.

The Special Inquiry Officer found that petitioner had been convicted of the offenses described in the order to show cause, and entered an order of deportation. He also stated that since he saw "no reason to delve into the second charge, it will be dismissed."

On appeal—in which petitioner was represented by counsel—the Board of Immigration Appeals ordered that the outstanding order of deportation be withdrawn, and that the case be remanded to the Special Inquiry Officer "for inclusion in the record of all the data relating to the respondent's two convictions in Germany on December 6, 1944 of the crime of petty theft and her conviction on December 12, 1944 of the crime of concealing stolen goods and for

1. Section 241(a) (1) of the Immigration and Nationality Act. 8 U.S.C.A. § 1251 (a) (1) provides:

"(a) Any alien in the United States * * * shall, upon the order of the Attorney General, be deported who—

"(1) at the time of entry was within one or more of the classes of aliens excludable by the law existing at the time of such entry."

2. Section 212(a) (9) and Section 212(a) (19) of the Act. 8 U.S.C.A. § 1182(a) (9, 19), provide:

"(a) Except as otherwise provided in this chapter, the following classes of

aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:

\* \* \* \* \*

"(9) Aliens who have been convicted of a crime involving moral turpitude (other than a purely political offense), or aliens who admit having committed such a crime * * *

\* \* \* \* \*

"(19) Any alien who seeks to procure, or has sought to procure, or has procured a visa or other documentation, or seeks to enter the United States, by fraud, or by willfully misrepresenting a material fact."

such further appropriate action as may be proper in the premises."

At the second hearing[3] the Government introduced into evidence, inter alia, certified records of petitioner's convictions in the Lower Court of Bremen, Germany, for two separate offenses of simple larceny, on December 6, 1944, and for the offense of concealing stolen goods, on December 12, 1944. These records show that the convictions were based upon petitioner's confessions. Certain other certified records were also introduced into evidence which would indicate that the records of these convictions were expunged under German law on September 30, 1954.

The Special Inquiry Officer, after discussion of the issues, adopted the allegations and the charges in the order to show cause as his findings of fact and conclusions of law, respectively, and entered an order of deportation.

On appeal, the Board of Immigration Appeals decided that the offense of concealing stolen goods was not one involving moral turpitude, but otherwise concurred in the decision of the Special Inquiry Officer. Accordingly, the Board ordered that the appeal be dismissed, with the proviso that the conviction for concealing stolen goods "is not to be used as a basis for deportation."

█ The scope of our review in this proceeding was stated by our Court of Appeals in its recent opinion in Bufalino v. Holland, 1960, 277 F.2d 270, 281:

"The right of review by the court of the action of the administrative agency in this case is limited to whether the decision of deportability was based on reasonable, substantial and probative evidence and was neither arbitrary, capricious nor violative of procedural due process (citing cases)."

█ After careful review of the administrative record, we are persuaded that the decision of petitioner's deportability was neither arbitrary, capricious nor violative of procedural due process. Petitioner conceded her convictions of simple larceny, as charged in the order to show cause. That the crime of larceny is one involving moral turpitude seems settled beyond dispute. In Quilodran-Brau v. Holland, 3 Cir., 1956, 232 F.2d 183, 184, the Court said:

"It is well settled as a matter of law that the crime of larceny is one involving moral turpitude regardless of the value of that which is stolen. See e. g., Tillinghast v. Edmead, 1 Cir., 1929, 31 F.2d 81 (15 dollars); Wilson v. Carr, 9 Cir., 1930, 41 F. 2d 704 (petit larceny); Pino v. Nicolls, 1 Cir., 1954, 215 F.2d 237 (a dozen golf balls), reversed on other grounds, Pino v. Landon, 1955, 349 U.S. 901, 75 S.Ct. 576, 99 L.Ed. [1239] 1273; United States ex rel. Ventura v. Shaughnessy, 2 Cir., 1955, 219 F.2d 249 (two sacks of corn meal); United States ex rel. Chartrand v. Karnuth, D.C.W.D. N.Y.1940, 31 F.Supp. 799 (shoes valued at 12 dollars). Whether there is a possible exception in an extreme case such as that instanced by troubled judges where a man takes the property of another to provide for his starving family is not a problem we need to worry about here."

█ Counsel for petitioner contends —as he did before the Immigration authorities—that the circumstances in which petitioner's offenses were committed "are important in ascertaining any degree of moral turpitude that may be involved." He reminds us—and it is a matter of common knowledge—that in the latter part of 1944, the Nazi regime was expiring in a Wagnerian finale of death and flame and swirling violence. The City of Bremen, a highly important industrial and strategic center, was the target of savage and unrelenting air attack. Normal civilian life was disrupted, the population lived largely underground, and there was that inevitable decline and

---

3. Before another Special Inquiry Officer.

disintegration of public morality that comes with war. Petitioner, a young and immature girl, left her home in Hanover and came to this seared and stricken city in search of employment. Her transgressions involved the theft of a small sum of money and a few articles of personal apparel, and one can surmise that privation was the motivating influence.

Counsel's argument makes a powerful appeal to reason and conscience. It poses the question whether the moral quality of an act can be assessed apart from the impact of attendant circumstance. Unfortunately for this petitioner, the question is not an open one. We regret that we are not free, as we understand the law, to go back of the convictions. Pino v. Nicolls, 1 Cir., 1954, 215 F.2d 237; United States ex rel. Giglio v. Neelly, 7 Cir., 1953, 208 F.2d 337; United States ex rel. Zaffarano v. Corsi, 2 Cir., 1933, 63 F.2d 757; United States ex rel. Manzella v. Zimmerman, D.C.E.D.Pa. 1947, 71 F.Supp. 534. In the Pino case, the court said (215 F.2d at page 245):

> "If the crime in its general nature is one which in common usage would be classified as a crime involving moral turpitude, neither the administrative officials in a deportation proceeding nor the courts on review of administrative action are under the oppressive burden of taking and considering evidence of the circumstances of a particular offense so as to determine whether there were extenuating factors which might relieve the offender of the stigma of moral obliquity."

The expunction of petitioner's convictions by the German authorities does not operate to eliminate the convictions as a basis for exclusion or deportation. Even a foreign pardon does not relieve the alien from the effect of the conviction insofar as the immigration laws are concerned. United States ex rel. Palermo v. Smith, 2 Cir., 1927, 17 F.2d 534; Weedin v. Hempel, 9 Cir., 1928, 28 F.2d 603; Mercer v. Lence, 10 Cir., 1938, 96 F.2d 122; United States

ex rel. Consola v. Karnuth, 2 Cir., 1939, 108 F.2d 178; Sohaiby v. Savoretti, 5 Cir., 1952, 195 F.2d 139; Vidal Y Planas v. Landon, D.C.S.D.Cal.1952, 104 F.Supp. 384.

While the petitioner's plight evokes our sympathy, we are not free to substitute our inclination or judgment for that of Congress. Our conclusion with respect to the first charge against petitioner makes it unnecessary to consider the remaining charges.

### Order

Now, June 20th, 1960, respondent's motion to dismiss the petition for review is denied and respondent's alternative motion for summary judgment is granted and judgment is now entered in favor of respondent and against Margarete Zgodda.

The order staying proceedings, heretofore entered, is vacated.