**Manuel DA ROSA SILVA, Petitioner**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Kenneth Elwood, & John Ashcroft Respondents**

No. 02–CV–8903.

United States District Court, E.D. Pennsylvania.

May 8, 2003.

Manuel Da Rosa Silva, Leesport, PA, Pro se.

Susan R. Becker, U.S. Attorney Office, Philadelphia, PA, for Respondents.

### *MEMORANDUM & O R D E R*

Anita B. Brody, District Judge.

## I. Factual and Procedural History

A native and citizen of Cape Verde, Manuel Da Rosa Silva ("Silva"), was admitted to the United States as a lawful permanent resident on August 28, 1980, at the age of sixteen. On July 17, 1995, Silva pleaded guilty in the New Jersey Superior Court, Union County, to the offense of burglary and, on January 12, 1996, was sentenced to three years of probation. Two months later, on March 26, 1996, Silva was arrested for burglary of a motor vehicle in Elizabeth, New Jersey. On June 26, 1996, Silva was sentenced to three years probation. On June 27, 1997, the Court found that Silva "wilfully violated conditions of his probation," vacated Silva's prior sentence of three years probation and sentenced him to four years imprisonment for the 1995 burglary indictment. Gov't Resp. to Pet. Ex. 2. After his release, on November 4, 1999, Silva was convicted of shoplifting in New Jersey, for which he served 180 days in prison.

On September 14, 2001, the Immigration and Naturalization Service (the "INS") issued a Notice to Appear, advising Silva that he was removable from the United States based on his 1995 burglary conviction, an aggravated felony as defined in 8 U.S.C. § 1227(a)(2)(A)(iii). on November 28, 2001, he was placed in INS custody. On May 7, 2002, at Berks County Prison, the INS served Silva with Additional Charges of Deportability that advised him that he was also removable from the United States pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii) because he had been

convicted of two separate crimes of moral turpitude, specifically, his 1995 burglary offense and his 1999 shoplifting offense.[1]

Silva sought to be released on bond while his removal proceedings were pending. On February 20, 2002, Immigration Judge Walter Durling (the "IJ") held a bond hearing and declined to release Silva while the removal proceedings were pending, finding that Silva presented a "threat to the community or a significant flight risk and should be detained in the custody of Immigration and Naturalization Service **without bond."** Gov't Resp. to Pet. Ex. 4 (emphasis in original).

At a March 12, 2002 hearing on the merits of Silva's removal, the IJ found that Silva's 1995 burglary conviction, for which he ultimately served four years in prison, was an aggravated felony as defined by the Immigration and Nationality Act ("INA"). On April 15, 2002, at a subsequent hearing to determine whether Silva was eligible for a waiver of his 1995 burglary conviction,[2] the IJ discovered that Silva had two additional criminal convictions, one from 1997 and one from 1999.[3] As a result, the IJ concluded that Silva was unable to receive any relief from removal, including waiver of his 1995 burglary conviction. Additionally, the IJ found that he could not grant Silva a waiver for his 1999 conviction because of Silva's 1995 aggravated felony conviction of burglary. Finally, the IJ ordered Silva removed to his native country of Cape Verde based on the charges set forth in the Notice to Appear. Gov't Resp. to Pet. Ex. 8. Silva appealed the IJ's decision to the Board of Immigration Appeals, which denied his appeal on October 31, 2002.

■ On November 29, 2002, Silva filed this habeas petition challenging the removal order that has been entered against him. Silva contends that: (1) his 1995 burglary conviction is not an aggravated felony and therefore he cannot be removed as an aggravated felon; (2) his conviction for shoplifting is not a crime of moral turpitude and therefore he cannot be removed because he has been convicted of only once, not twice, of a crime of moral turpitude; (3) he is statutorily eligible for waiver of deportation under 8 U.S.C. § 1182(h) and the denial of a § 1229b waiver is a violation of his equal protection rights; (4) he is statutorily eligible for waiver of deportation under 8 U.S.C. § 1229b; (5) he is statutorily eligible for waiver of deportation under 8 U.S.C. § 1182(c); (6) his due process rights were violated by the IJ's failure to inform him of the availability of counsel and the subsequent lack of counsel at Silva's removal hearings; and (7) his detention is unlawful.[4]

1. The INS failed to cite Silva's 1996 conviction for theft of a motor vehicle in the Notice to Appear or the Additional Charges of Deportability.

2. Presumably Silva would have needed a waiver for his 1996 burglary conviction as well. But, because the INS failed to cite the 1996 conviction for theft of a motor vehicle in the Notice to Appear or the Additional Charges of Deportability, this issue was precluded from being raised in the removal proceedings.

3. While the record is unclear, Silva's 1997 conviction appears to be for shoplifting. The INS did not cite this conviction in either the Notice to Appear or the Additional Charges of Deportability. Therefore, while the Immigration Judge was apprized of the existence of the 1997 charge, it was not considered in the removal proceedings. Silva's 1999 conviction for shoplifting was cited in the Additional Charges of Deportability, however, and was considered by the Immigration Judge.

4. A federal prisoner ordinarily may not seek habeas corpus relief until he or she has exhausted all available administrative remedies. *See Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir.1981); *Arias v. United States Parole Commission*, 648 F.2d 196 (3d Cir.1981); *United States ex rel. Sanders v. Arnold*, 535 F.2d 848, 850 (3d Cir.1976); *Soyka v.Alldredge*, 481 F.2d 303 (3d Cir.1973). In this

## II. Jurisdiction and Standard of Review

■■■■ The district court has subject matter jurisdiction to entertain petitions for a writ of habeas corpus filed by aliens subject to a final order of removal under to 28 U.S.C. § 2241(c), which authorizes the district court to review an alien's removal order. *See* 28 U.S.C. § 2241(c); *Zadvydas v. Davis,* 533 U.S. 678, 688, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001); *INS v. St. Cyr,* 533 U.S. 289, 121 S.Ct. 2271, 2287, 150 L.Ed.2d 347 (2001); *Liang v. INS,* 206 F.3d 308, 317 (3d Cir.2000), *cert. denied,* 533 U.S. 949, 121 S.Ct. 2590, 150 L.Ed.2d 749 (2001).[5] Habeas review is limited to questions of statutory and constitutional law. *See Bradshaw v. INS,* 2002 WL 1160832, *1 (E.D.Pa. June 3, 2002); *Marshall v. INS,* 2002 WL 818865, *3 (E.D.Pa. April 29, 2002); *Sol v. INS,* 274 F.3d 648, 651 (2d Cir.2001); *Goncalves v. Reno,* 144 F.3d 110, 125 (1st Cir.1998). Federal courts may not review purely factual or discretionary decisions of the Attorney General to execute removal orders. *See Chmakov v. Blackman,* 266 F.3d 210, 215 (3d Cir.2001)(citing 8 U.S.C. § 1252(g))[6];

*Sulaiman v. Attorney General,* 212 F.Supp.2d 413, 416 (E.D.Pa.2002)("only questions of pure law will be considered on § 2241 habeas review. Review of factual or discretionary issues is prohibited."); *see also, Sciglitano v. Ashcroft,* 2002 WL 461987, *3 (E.D.Pa. March 25, 2002)(citing *St. Cyr,* 533 U.S. at 298, 308, 121 S.Ct. 2271) (distinguishing between review of petitioner's eligibility for discretionary relief and favorable exercise of discretion by Attorney General).

## III. Discussion

### A. Silva's 1995 Burglary Conviction is an Aggravated Felony

The IJ properly ruled that Silva is deportable as an aggravated felon under 8 U.S.C. § 1227(a)(2)(A)(iii). 8 U.S.C. § 1227(a)(2)(A)(iii) provides that "any alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). An "aggravated felony" includes "a theft offense . . . or burglary offense for which the term of imprisonment [is] at least 1 year." 8 U.S.C. § 1101(a)(43)(G).[7] Term of impris-

---

case, it is impossible to discern if all the claims presented in Silva's habeas petition were raised before the IJ because the transcript of the proceedings before the IJ is incomplete. Silva did, however, raise all of his claims before the BIA. Furthermore, because the government has not addressed the potential waiver of any of Silva's contentions, this court will assume that Silva has not waived any claim by failing to raise it at the appropriate time in the administrative process.

5. The district court retains subject matter jurisdiction over habeas petitions despite the amendments to the INA rendered by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No 104–132, 110 Stat. 1214 (enacted and effective April 24, 1996), and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208,110 Stat. 3009–546 (enacted on September 30, 1996 and effective on April 1, 1997).

6. Section 1252(g) states, in relevant part:

Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter. 8 U.S.C. § 1252(g).

7. In *United States v. Graham,* 169 F.3d 787 (3d Cir.1999), the Third Circuit noted that 8 U.S.C. § 1101(a)(43)(G), which refers to an offense "for which the term of imprisonment [sic] at least one year," "is obviously missing a crucial verb." 163 F.3d at 789. The court went on to interpret the phrase to refer to the term of imprisonment that is actually imposed.

onment is defined to include actual periods of incarceration or confinement. *See* 8 U.S.C. § 1101(a)(48)(B).[8]

On July 17, 1995, Silva pleaded guilty to a burglary offense in New Jersey. Silva was initially sentenced to three years of probation for this 1995 burglary offense. On June 27, 1997, however, Silva's probationary sentence was vacated because he violated the conditions of his probation. After vacating Silva's probationary sentence, the judge resentenced Silva to serve four years in prison for his 1995 burglary conviction.[9]

■ Silva incorrectly maintains that he is not deportable as an aggravated felon under 8 U.S.C. § 1227(a)(2)(A)(iii) because he was initially sentenced to probation for his 1995 burglary offense. Under New Jersey law, probation is properly viewed as a conditional sentence in that the defendant remains subject to a prison term for failure to comply with the conditions imposed by the court. *See* N.J.S.A. 2C:45–3(a)(4) and ABA Standards, Probation s 1.1(b) and Commentary (Approved Draft, 1970). The New Jersey statute that addresses revocation of probation provides that:

> [t]he court, if satisfied that the defendant has inexcusably failed to comply

with a substantial requirement imposed as a condition of [probation] or if [the defendant] has been convicted of another offense, may revoke the suspension or probation and sentence or resentence the defendant ... When the court revokes a suspension or probation, it may impose on the defendant any sentence that might have been imposed originally for the offense for which he was convicted.

N.J.S.A. 2C:45–3a(4),b (2003).

In this case, Silva was placed on probation as a conditional sentence. When he violated the terms of his probation, the court revoked his conditional sentence of probation and imposed a sentence of four years imprisonment. This four-year prison sentence related back to the 1995 burglary conviction. As a result, Silva is removable as an aggravated felon because his 1995 conviction was for a burglary offense for which the term of imprisonment was greater than one year. *See* 8 U.S.C. § 1101(a)(43)(G).

## B. Silva Has Two Convictions for Crimes of Moral Turpitude

■ Silva is removable not only as a result of his commission of an aggravated felony, but also because he has committed two separate crimes of moral turpitude, namely, his 1995 burglary conviction and his 1999 shoplifting conviction.[10] Under 8

---

8. The statute provides:
 Any reference to the term of imprisonment or a sentence with respect to an offense is deemed to include the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment or sentence in whole or in part.
 8 U.S.C. § 1101(a)(48)(B).

9. In his order, the judge stated that "the defendant's prior sentence is vacated and the following is imposed. The defendant is remanded to the custody of the Commissioner of the Department of Corrections for a period of four [4] years, concurrent to each Count, and until released in accordance with law." Gov't Resp. to Pet. Ex. 2.

10. When the INS served Silva with Additional Charges of Deportability, he was placed on notice that he was removable because he has been convicted of two separate crimes of moral turpitude. At the removal proceedings, however, the IJ did not order Silva removed on the basis of these two moral turpitude convictions. *See* Gov't Resp. to Pet. Ex. 8. Nonetheless, the IJ did consider these convictions when determining whether to grant Silva a § 212(c) waiver. *See* discussion *infra* Part III.E. Because the IJ did consider Silva's convictions as two separate crimes of moral turpitude, I will now review the legality of such a determination.

U.S.C. § 1227(a)(2)(A)(II)(ii), conviction of two crimes of moral turpitude is grounds for removal.[11] Silva does not contest that his 1995 burglary conviction is for a crime of moral turpitude. He does contend, however, that his 1999 shoplifting conviction is not a conviction for a crime involving moral turpitude.

■ The immigration statute does not define "crime of moral turpitude." The term "moral turpitude" defies a precise definition. 6 Charles Gordon, et al. Immigration Law and Procedure § 71.05(1)(d)(i). Black's Law Dictionary notes an "honesty" component in its definition, which includes: "[c]onduct that is contrary to justice, honesty, or morality." Black's Law Dictionary 1026 (7th ed.1999); see also, De Leon–Reynoso v. Ashcroft, 293 F.3d 633, 636 (3d Cir.2002)(citing 37 Op. Att'y Gen. 293, 294 (1933) ("A good and comprehensive statement concerning 'moral turpitude' [is] ... anything done contrary to justice, honesty, principle, or good morals.")). Moral turpitude has been held to refer "to conduct which is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general ..." Matter of Franklin, 20 I. & N. Dec. 867, 868 (BIA 1994) aff'd, 72 F.3d 571 (8th Cir.1995); see also, Duvall v. Elwood, 2002 WL 1870457, *1 (E.D.Pa. Aug. 9, 2002); State Board of Medical Examiners v. Weiner, 68 N.J.Super. 468, 483, 172 A.2d 661 (App.Div.1961). Most theft offenses involve moral turpitude. See Duvall, 2002 WL 1870457 at *1; Matter of Alarcon, Int. Dec. # 3184 (BIA 1992) (petty theft under Cal.Penal Code § 484); Matter of R, 6 I. & N. Dec. 19 (BIA

1955)(receiving stolen property under N.J.Rev.Stat. § 2:164–1).

■ In 1999, Silva was convicted of shoplifting in violation of N.J.S.A. § 2C:20–11(b)(1). Black's Law Dictionary defines shoplifting as "[l]arceny of merchandise from a store or business establishment." Black's Law Dictionary 1378 (6th ed.1990). "It is well settled as a matter of law that the crime of larceny is one involving moral turpitude regardless of the value of that which is stolen." Quilodran–Brau v. Holland, 232 F.2d 183, 184 (3d Cir.1956); see e.g., Zgodda v. Holland, 184 F.Supp. 847, 850 (E.D.Pa.1960)(larceny of small sum of money and personal apparel during Nazi regime in Germany involves moral turpitude); Tillinghast v. Edmead, 31 F.2d 81 (1st Cir.1929)(larceny of fifteen dollars involves moral turpitude); Wilson v. Carr, 41 F.2d 704 (9thCir.1930)(petit larceny involves moral turpitude); Pino v. Nicolls, 215 F.2d 237 (1st Cir.1954)(larceny of dozen golf balls involves moral turpitude), reversed on other grounds, Pino v. Landon, 349 U.S. 901, 75 S.Ct. 576, 99 L.Ed. 1239 (1955); United States ex rel. Ventura v. Shaughnessy, 219 F.2d 249 (2d Cir.1955)(larceny of two sacks of cornmeal involves moral turpitude); see also, Wong v. INS, 980 F.2d 721, 1992 WL 358913, at *5, n. 5 (1st Cir.1992)(citing cases finding that a shoplifting offense is a crime involving moral turpitude). Under these interpretations, the crime of shoplifting is a larceny that involves moral turpitude.

Silva contends, nevertheless, that his 1999 conviction for shoplifting is not a conviction of a crime of moral turpitude. To support his argument, Silva points to the fact that he was only sentenced to 180 days in prison for shoplifting. The length

---

**11.** 8 U.S.C. § 1227(a)(2)(A)(II)(ii) provides for deportation of anyone who:

at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of

criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial.

8 U.S.C. § 1227(a)(2)(A)(II)(ii).

of Silva's sentence, however, is immaterial in determining whether his 1999 conviction is for a crime of moral turpitude. Unlike the one year minimum sentence requirement in the definition of an aggravated felony based on a theft conviction, there is no minimum sentence requirement for crimes of moral turpitude. Thus, Silva's 1999 shoplifting conviction is clearly a crime of moral turpitude. As a result, Silva is removable under 8 U.S.C. § 1227(a)(2)(A)(II)(ii), because he has been convicted of two crimes of moral turpitude, namely, his 1995 burglary conviction and his 1999 shoplifting conviction.

## C. Silva is Ineligible for a Hardship Waiver under 8 U.S.C. § 1182(h)

■ Silva argues that his removal order is unlawful because he is eligible for a waiver under 8 U.S.C. § 1182(h). This provision of the statute, known as a hardship waiver, provides the Attorney General with ·the discretion to waive deportation orders for those persons subject to deportation because of his or her commission of certain crimes. The alien may qualify if he or she is:

the spouse, parent, son, or daughter of a citizen of the United States or an alien lawfully admitted for permanent residence if it is established to the satisfaction of the Attorney General that the alien's denial of admission would result

in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien; and the Attorney General, in his discretion, ... has consented to the alien's applying or reapplying for a visa, for admission to the United States, or adjustment of status.

8 U.S.C. § 1182(h)(1)(B), (h)(2)(1994 & Supp. II 1996); *see also, Catney v. I.N.S.,* 178 F.3d 190, 193 (3d Cir.1999). The hardship waiver is not available, however, to lawful permanent residents who have been convicted of an aggravated felony after their admission for permanent residence. The statute provides, in pertinent part:

No waiver shall be granted ... in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if either since the date of such admission the alien has been convicted of an aggravated felony or the alien has not lawfully resided continuously in the United States for a period of not less than 7 years immediately preceding the date of initiation of proceedings to remove the alien from the United States.[12]

8 U.S.C. § 1182(h). Because Silva is a permanent resident who has committed an aggravated felony, he is ineligible to receive a hardship waiver.[13]

8 U.S.C. § 1182(h) makes a distinction between two categories of aliens: aggra-

---

**12.** The statutory bar for aggravated felons was added in 1996 with the passage of IIRI-RA. Prior to that date, aggravated felons were eligible to apply for a § 1182(h) hardship waiver. Because Silva's 1995 aggravated felony conviction pre-dates the enactment of IIRIRA, there could be an open question as to whether the operation of this IIRIRA amendment barring Silva's eligibility to seek discretionary § 1182(h) relief would have an impermissible retroactive effect. *See Landgraf v. USI Film Prod.,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). (The first step in determining whether a statute has an impermissible retroactive effect is to ascertain

whether Congress has directed with the requisite clarity that the law be applied retrospectively. *See Martin v. Hadix,* 527 U.S. 343, 352, 119 S.Ct. 1998, 144 L.Ed.2d 347 (1999)). The retroactive effect of § 1182(h) is adequately authorized by the statute. In *St. Cyr,* the Supreme Court cited § 1182(h) as an example of Congress' willingness "to indicate unambiguously its intention to apply specific provisions [of IIRIRA] retroactively." *St. Cyr,* 533 U.S. at 319 n. 43, 121 S.Ct. 2271 (2001).

**13.** In this case, it is unclear whether the IJ considered granting Silva a § 1182(h) hardship waiver. *See supra* note 4.

vated felons who are lawful permanent residents are ineligible for the family hardship waiver from deportation, yet aggravated felons who arrived in this country illegally are eligible for the waiver. Silva contends that this distinction drawn by § 1182(h) violates the equal protection component of the Fifth Amendment's Due Process Clause. Silva's argument is foreclosed by the Third Circuit's recent ruling in *De Leon–Reynoso v. Ashcroft*, 293 F.3d 633 (3d Cir.2002), in which the court held that 8 U.S.C. § 1182(h) does not violate equal protection.[14] The Third Circuit stated that because "Congress conceivably had good reasons to create the § 1182(h) distinction, ... the distinction survives rational basis scrutiny."[15] *Id.* at 640. *See also, Lukowski v. INS*, 279 F.3d 644, 647 (8th Cir.2002)("1182(h) easily passes equal protection muster."); *Jankowski–Burczyk v. INS*, 291 F.3d 172 (2d Cir.2002); *Moore v. Ashcroft*, 251 F.3d 919, 925 (11th Cir. 2001); *Cf., Song v. INS*, 82 F.Supp.2d. 1121 (C.D.Cal.2000). Therefore, because the § 1182(h) distinction survives rational basis scrutiny, aggravated felons, such as Silva, remain ineligible for a hardship waiver.

### D. Silva is Not Eligible for Cancellation of Removal Under 8 U.S.C. § 1229b

■ The IJ found that Silva was statutorily ineligible to receive relief from re-

moval under 8 U.S.C. § 1229b(a).[16] This provision of the statute, known as "cancellation of removal," provides that:

> the Attorney General may cancel removal in the case of an alien who is ... deportable from the United States if the alien—(1) has been an alien lawfully admitted for permanent residence for not less than 5 years; (2) has resided in the United States continuously for 7 years after having been admitted in any status; and (3) has not been convicted of an aggravated felony.

8 U.S.C. § 1229b(a). Silva meets the requirements for subsections (1) and (2), but he is statutorily ineligible for cancellation of removal because he has been convicted of an aggravated felony. Therefore, the IJ properly denied Silva's application for cancellation of removal.

### E. Silva is Eligible for a § 212(c) Waiver

The IJ found that Silva was statutorily ineligible to receive a " § 212(c)" waiver. Before the effective dates of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), § 212(c) of the INA was interpreted to give the Attorney General broad discretion to waive deportation of resident aliens. This waiver was known as a "212(c)" waiver after its section number in the INA.[17] In 1996, Congress limited

---

**14.** The petitioner in *De Leon–Reynoso* was not entitled to a hardship waiver from deportation because he had not resided continuously in the United States for a period of seven years immediately preceding the date of initiation of proceedings to remove him from this country. *De Leon–Reynoso*, 293 F.3d at 637, 638 (3d. Cir.2002). The petitioner in *De Leon–Reynoso* argued that the distinction between the two categories of aliens "allows a criminal alien who has never had permanent resident status in the United States, never acquired equities or family ties, to secure a waiver, while *those who have been previously*

admitted as lawful permanent residents, but with less than seven years required residence, will be deported."*Id.* at 638.

**15.** The Third Circuit found that § 1182 survived rational basis scrutiny. The court expressly stated, however, that their holding "should not be mistaken for an endorsement of the policy." *Id.* at 640.

**16.** § 1229b replaced the repealed " § 212(c)" [8 U.S.C. § 1182(c) ] waiver.

**17.** § 212(c) was codified at 8 U.S.C. § 1182(c) prior to its repeal.

the 212(c) waiver by § 404 of the AEDPA, which identified a broad set of offenses for which convictions would preclude such relief; and by IIRIRA, which repealed § 212(c) and replaced it with a new section excluding from the class "anyone convicted of an aggravated felony."[18] 8 U.S.C. § 1229b(a)(3).

In this case, despite the fact that his removal proceedings were commenced after the 1996 repeal of the § 212(c) waiver, Silva remains eligible for a § 212(c) waiver in light of the Supreme Court's decision in *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) ("*St. Cyr*"). Finding that Congress had not been sufficiently explicit in repealing the waiver, the Supreme Court held "that § 212(c) relief remains available for aliens ... whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." *St. Cyr*, 533 U.S. at 326, 121 S.Ct. 2271. Silva is eligible for § 212(c) relief because at the time he plead guilty to the 1995 burglary offense, § 212(c) relief was still available, even for those aliens convicted of an aggravated felony.

At a hearing held on March 12, 2002, the IJ made a preliminary finding that Silva was eligible to seek a § 212(c) waiver. At the next hearing on April 15, 2002, the INS informed the IJ that Silva had two convictions that post-dated the 1996 change in the law.[19] After learning this new information, the IJ incorrectly advised Silva that he was not eligible for a § 212(c) waiver. The IJ reasoned that without a waiver for all of Silva's convictions, a § 212(c) waiver for his 1995 conviction would be fruitless.[20]

Granting Silva a § 212(c) waiver may, in fact, be fruitless, however, this does not affect his eligibility to receive such a waiver under the statute. Therefore, I find Silva is eligible for a § 212(c) waiver, vacate the IJ's decision and remand Silva's petition back to the IJ for a determination of whether Silva should receive a § 212(c) waiver.

---

18. In April 1996, Congress limited the "212(c)" waiver to criminal aliens who were not aggravated felons. *See* § 404(d) of the AEDPA of 1996, Pub.L. No. 104–132, tit. I, 110 Stat. 1214 (April 24, 1996). On September 30, 1996, Congress then repealed the waiver in its entirety. *See* § 304(b) of IIRIRA of 1996, Pub.L. No. 104–208, 110 Stat. 3009 (effective April 1, 1997).

19. The two convictions noted were Silva's 1997 and 1999 shoplifting convictions. While the Immigration Judge was informed of both convictions, only the 1999 shoplifting conviction was considered because Silva's 1997 conviction was not listed in either the Notice to Appear or the Additional Charges of Deportability.

20. In his oral decision, the IJ stated:
[e]ven though his burglary conviction occurred prior to the implementation of the IIRIRA [in] 1996 and thus [Silva] could potentially seek a § 212(c) waiver under present case law, the respondent is statutorily ineligible. In this regard, the respondent has an aggravated felony conviction. Thus, even though he could get a 212(c) waiver for that, he cannot now seek a cancellation waiver for his shoplifting conviction, since [§ 1229(b)(a)(3)] indicates that a person convicted of an aggravated felony may not receive a cancellation waiver. Since the 212(c) [waiver] would only waive and not expunge or otherwise do away with the burglary conviction, the conviction would still exist as an aggravated felony even in spite of the waiver ... Because of that, the respondent is not eligible for cancellation waiver ... because of his conviction for shoplifting.
Gov't Resp. to Pet. Ex. 8 at 2.

### F. Silva's Due Process Rights Were Not Violated by His Lack of Representation in the Removal Proceedings

 Silva claims that his due process rights were violated by the IJ's alleged failure to advise him that he could obtain legal representation for the removal proceedings. There is no Sixth Amendment right to counsel in deportation hearings. Therefore, any claim of ineffective assistance of counsel must be based on a deprivation of due process under the Fifth Amendment umbrella of "procedural" due process. *Uspango v. Ashcroft*, 289 F.3d 226, 231 (3d Cir.2002); *Xu Yong Lu v. Ashcroft*, 259 F.3d 127 (3d Cir.2001)(citing *INS v. Lopez–Mendoza*, 468 U.S. 1032, 1038, 104 S.Ct. 3479, 3483, 82 L.Ed.2d 778 (1984)). To meet the standard for a due process violation, Silva must show that he was "prevented from reasonably presenting his case." *Xu Yong Lu*, 259 F.3d at 131.

INS regulations require the IJ to advise an alien of his or her right to secure counsel of the alien's choice at the start of the hearing, as well as the availability of free legal services. *See* 8 C.F.R. § 240.10(a)(1) & (2).[21] After the IJ makes such a disclosure, the IJ must then require the alien to state whether he or she desires representation. *See id.*

 In the instant case, the IJ acted in conformity with the regulations and provided Silva ample opportunity to secure representation. Silva provides no support for his statement that the IJ failed to advise him of his right to secure counsel of his choice or the availability of free legal services. When Silva was served with a Notice to Appear, he was given a list of attorneys and organizations that provided free legal services. Gov't Resp. to Pet. Ex. 1 at 2 (Certificate of Service). In his habeas petition, Silva states that he informed the IJ that he wished to be represented by his family counsel, however, this counsel was in Providence, Rhode Island, and would not be able to represent him because of the distance between Providence and York, Pennsylvania. Pet. Ex. B at 6. Presumably, Silva did not offer this information unsolicited, but rather, stated his intent to retain counsel after being apprized of such a right by the IJ.[22] The first page of the transcribed record from Silva's February 12, 2002 hearing supports this presumption. At this hearing, the IJ discussed Silva's representation by counsel, stating, "When you appeared before a Judge last month, you indicated to her that you were attempting to get an attorney through your brother." Gov't Resp. to Pet. Ex. 3 at 1 (transcript from February 12, 2002 hearing). Presumably, there was a discussion regarding Silva's retention of counsel at a previous hearing that was not transcribed.

It is clear that the IJ was sensitive to the issue of representation by counsel and gave Silva several chances to obtain coun-

---

**21.** The regulations state, in pertinent part:

(a) Opening. In a removal proceeding, the immigration judge shall:

(1) Advise the respondent of his or her right to representation, at no expense to the government, by counsel of his or her choice authorized to practice in the proceedings and require the respondent to state then and there whether she desires representation.

(2) Advise the respondent of the availability of free legal services provided by organiza-

tions and attorneys qualified under 8 C.F.R. part 3 and organizations recognized pursuant to § 292.2 of this chapter, located in the district where the removal hearing is being held;

(3) Ascertain that the respondent has received a list of such programs . . .

8 C.F.R. § 240.10

**22.** As I have already noted, the transcribed record of Silva's removal proceedings is incomplete.

sel. At the same February 12, 2002 hearing, the IJ further stated, "you have a right to have an attorney represent you in a bond hearing too. You have a right to one bond hearing only. You can have one today without a lawyer or we can postpone it and give you one more opportunity to try to get an attorney to represent you at the bond hearing." Gov't Resp. to Pet. Ex. 3 at 1–2 (transcript from February 12, 2002 hearing). Silva opted to proceed despite the fact that he had not retained counsel.[23] The IJ did not release Silva on bond, and at the next hearing the IJ declined to transfer the case to Rhode Island despite Silva's reassertion that he had a family lawyer in Rhode Island who agreed to represent Silva if the case was transferred to the Boston/Rhode Island area. Gov't Resp. to Pet. Ex. 5 at 9 (transcript of March 12, 2002 hearing).

While it is unfortunate that Silva was unable to procure his desired counsel, he was clearly informed of his right to counsel and of free legal services available in the area in which his removal proceedings were located. Silva cannot demonstrate that the presence of an attorney would have produced a different result. Moreover, Silva has failed to make any showing that he was "prevented from reasonably presenting his case." *Xu Yong Lu*, 259 F.3d at 131. As such, I find that no prejudice resulted from Silva's failure to have an attorney and that his right to due process was not violated.

**23.** It appears Silva hoped that he would be released and that the proceedings would then be transferred to the Boston area, which is closer to Providence. *See,* Gov't Resp. to Pet. Ex. 3 at 1 ("... my brother's lawyer said for me to try to get bail because if I get bail, my case will be moved to Boston, then he can take it ...").

**24.** 8 U.S.C. § 1226(c), governing "Detention of criminal aliens," provides, in pertinent part:

## G. Silva's Detention is Lawful

In the final claim of his habeas petition, Silva argues that his continued detention is unconstitutional. Throughout his removal proceedings, Silva has been detained pursuant to 8 U.S.C. § 1226(c). This provision of the statute provides for mandatory detention of criminal aliens subject to removal by reason of having committed an aggravated felony.[24] Criminal aliens subject to mandatory detention are not entitled to an individualized bond determination to address the necessity of detention. *Id.*

Silva's argument is completely foreclosed by the Supreme Court's recent decision in *Demore v. Hyung Joon Kim*, — U.S. ——, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003). Noting that "detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed," the Supreme Court held that mandatory detention for criminal aliens is a constitutionally permissible part of the removal process. *Id.* Therefore, Silva's continued mandatory detention while in removal proceedings is clearly constitutional.

Prior to the Supreme Court's decision in *Demore*, however, a conflict existed between circuits. Three Courts of Appeals, including the Third Circuit, reached the conclusion that criminal aliens could not be

(1) Custody
The Attorney General shall take into custody any alien who ... is deportable by reason of having committed any offense covered in § 1227(a)(2)(A)(ii), (A)(iii), (B),(C), or (D) of this title ... when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense ...

subject to mandatory detention without an opportunity for an individualized determination of the necessity for such detention. *See Patel,* 275 F.3d 299 (3d Cir.2001); *Welch v. Ashcroft,* 293 F.3d 213 (4th Cir. 2002); *Hoang v. Comfort,* 282 F.3d 1247 (10th Cir.2002). The Seventh Circuit, however, rejected a constitutional challenge to § 1226(c) by a permanent resident alien. *See Parra v. Perryman,* 172 F.3d 954 (7th Cir.1999).

At the time Silva's removal proceedings began, the Third Circuit's holding in *Patel v. Zemski,* 275 F.3d 299 (3d Cir.2001), applied to all criminal aliens subject to mandatory detention in the Third Circuit. In *Patel,* the Third Circuit held that mandatory detention of aliens violates their due process rights unless they have been afforded the opportunity for an individualized hearing to address the necessity of such detention.[25]

In this case, Silva received just such an individualized hearing. On November 28, 2001, Silva was placed in INS custody pending the outcome of his removal proceedings. On February 20, 2002, the IJ, relying on the Third Circuit's decision in *Patel,* held a bond hearing and declined to

release Silva while removal proceedings were pending.[26] Noting that Silva had an extensive criminal history and a poor probation record, the IJ found that Silva presented "a threat to the community or a significant flight risk" and denied him release on bond. Gov't Resp. to Pet. Ex. 4.[27]

Thus, applying *Patel,* Silva's constitutional due process rights were in no way violated by his detention pending the outcome of his removal proceedings. Less than three months after he was placed in INS custody, Silva was afforded an individualized hearing to address the necessity of his detention. Applying the criteria outlined in *Patel,* the Immigration Judge exercised his discretion and declined to release Silva. This purely discretionary decision of the IJ is not reviewable by this court.

**IV. Motion for Temporary Stay of Removal[28]**

Because I will remand Silva's petition to the IJ to determine whether to grant Silva a § 212(c) waiver, Silva's deportation is accordingly stayed pending the outcome of the IJ's decision.

**25.** The Third Circuit noted the need to examine an alien's potential for flight and danger to

the community, stating:
"[m]andatory detention of aliens after they have been found subject to removal but who have not yet been ordered removed because they are pursuing their administrative remedies violates their due process rights unless they have been afforded the opportunity for an individualized hearing at which they can show that they do not pose a flight risk or danger to the community." *Patel,* 275 F.3d at 314.

**26.** In his Bond Redetermination Memo, the IJ states that he provided Silva with a bond hearing in compliance with the Third Circuit's holding in *Patel.*

**27.** The IJ stated that in making his determination he took "particular note" of the Third Circuit's observation in *Patel* that "government detention violates substantive due process unless it is ordered in ... special and narrow non-punitive circumstances ... where a special justification ... outweighs the individual's constitutionally protected interest in avoiding physical restraint." Gov't Resp. to Pet. Ex. 4 (bond redetermination memo)(citing *Patel,* 275 F.3d at 309 (citing *Zadvydas v. Davis,* 533 U.S. 678, 690, 121 S.Ct. 2491, 2499, 150 L.Ed.2d 653 (2001))).

**28.** Silva filed a "Motion for a Temporary Restraining Order." Because Silva is seeking to temporarily stay his removal from the United States while this petition is pending, I will refer to this as a motion for a temporary stay of removal.

## 1018

### V. Conclusion

For the reasons stated above, I will grant Silva's habeas petition and remand back to the IJ for a determination as to:

(1) Silva's entitlement to a § 212(c) waiver;

I will deny the remaining claims of Silva's habeas petition, finding that:

(1) Silva's 1995 burglary conviction is an aggravated felony;

(2) Silva has been convicted of two crimes of moral turpitude;

(3) Silva is ineligible for a hardship waiver under 8 U.S.C. § 11182(h);

(4) Silva is ineligible for Cancellation of Removal under 8 U.S.C. § 1229b;

(5) Silva's due process rights were not violated by his lack of counsel;

(6) Silva's continued detention while his removal is pending is constitutional.

An appropriate Order follows.

### ORDER

**AND NOW**, this day of April, 2003, upon consideration of the petition for writ of habeas corpus (docket entry # 1), the response thereto, the motion of petitioner to stay deportation, and all accompanying documents filed, and for the reasons set forth in the foregoing memorandum, **IT IS ORDERED** that petitioner's habeas petition is **GRANTED IN PART** and **DENIED IN PART**.

Silva's habeas petition is **GRANTED** and **REMANDED** to the IJ for a determination as to:

(1) Silva's entitlement to a § 212(c) waiver.

The remaining claims of Silva's habeas petition are **DENIED**.

It is **FURTHERED ORDERED** that petitioner's motion to stay deportation/for a temporary restraining order (docket entry # 2) is **GRANTED** pending the decision of the IJ.